Leeor Neta, *admitted pro hac vice*
*leeor@newmanlaw.com*
Jake Bernstein, WSBA #39362
*jake@newmanlaw.com*
NEWMAN DU WORS LLP
2101 Fourth Avenue, Suite 1500
Seattle, WA 98121
Telephone: (206) 274-2800

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RIVER CITY MEDIA, LLC, et al., | Case No. 2:17-cv-00105-SAB |
|       Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANT KROMTECH ALLIANCE CORPORATION'S MOTION TO DISMISS PLAINTIFFS' CLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
|       v. | |
| KROMTECH ALLIANCE CORPORATION, et al., | |
|       Defendants. | With Oral Argument Hearing Date: August 16, 2017 @ 1:30 p.m. Spokane, Washington |

PLAINTIFFS' OPP. TO DEFENDANT
KROMTECH's MOTION TO DISMISS
[2:17-cv-00105]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

# I. INTRODUCTION

Defendant Kromtech Alliance Corporation ("Kromtech") claims it is not subject to this Court's jurisdiction because (1) it is not responsible for any of the acts alleged in the Complaint because Defendant Chris Vickery ("Vickery") acted on his own and not as an employee or agent of Kromtech and (2) the exercise of jurisdiction over Kromtech would be burdensome, unreasonable, and not comport with due process.

Kromtech is wrong. Kromtech hired and incented Vickery to find, exploit, and expose potential security holes in order to market its security products and services. Vickery—acting as Kromtech's agent—hacked into Plaintiff River City Media, LLC's computer network ("River City", and together with individual plaintiffs, "Plaintiffs"), stole gigabytes of proprietary, sensitive, and highly confidential information, severely damaged Plaintiffs' technological infrastructure, and used that stolen data to write defamatory articles about Plaintiffs. And his actions directly benefited Kromtech by creating media attention, especially within the security industry. Nor would the exercise of jurisdiction over Kromtech be unreasonable or burdensome. Kromtech operates an interactive website, MacKeeper.com, which it actively promotes via online advertising on Washington news websites, and that sells software and services to Washington citizens.

Kromtech also requests dismissal under Rule 12. But Kromtech lacks any basis in law or fact to dismiss Plaintiffs' claims. The Federal Rules require a "short and plain statement" of the claim and the facts supporting that claim. Plaintiffs' Complaint satisfies this standard and does not rely upon a mere "formulaic recitation of the elements of a cause of action." Instead, the Complaint contains well-plead allegations of wrongdoing that connect Kromtech to that wrongdoing. The Court should reject Kromtech's request for dismissal under Rule 12.

# II. FACTS

This case is about a devastating computer hacking campaign undertaken by

1   Defendant Chris Vickery at the behest of Defendant Kromtech Alliance

2   Corporation ("Kromtech"). That campaign decimated River City's computer

3   network. *See* Declaration of Mark Ferris ("Ferris Decl."), ECF No. 25 at ¶¶ 10–

4   36. The follow-up media attention then ruined its reputation in the marketplace.

5   Declaration of Amber Paul ("Paul Decl."), ECF No. 24 at ¶¶ 13–15; *see also*

6   Complaint, ECF No. 1 at 2–3. Before the campaign, River City was a multi-million-

7   dollar affiliate marketing enterprise bringing jobs and revenue to Spokane.

8   Complaint, ECF No. 1 at 2–3. After the campaign, it was out of business—all

9   because of Defendants' actions. *Id.*

10      Kromtech plays a central role in this saga. Kromtech owns, operates and

11   sponsors the website MacKeeper.com. Declaration of Sergii Sosniak ("Sosniak

12   Decl."), ECF No. 42 at ¶ 3. That site is home to the MacKeeper.com Security

13   Research Center and blog. At all times relevant to this lawsuit, Chris Vickery, a

14   "MacKeeper Security Researcher," wrote articles for MacKeeper.com, which

15   Kromtech posted publicly. Kromtech admits that it hired Vickery to "provide two

16   articles each month; one article on a data breach, the other on a general security

17   topic." Kromtech's Motion to Dismiss (ECF. No. 41) at 3; Sosniak Decl., ECF 42,

18   at ¶ 6; *see also* ECF 42-1 (Kromtech-Vickery Services Agreement). In other words,

19   Kromtech motivated and incented Vickery's data breach.

20      Then, on March 6, 2017, Kromtech published Vickery's blog post titled

21   "Spammergate: The Fall of an Empire" at https://mackeeper.com/blog/post/339-

22   spammergate-the-fall-of-an-empire (the "Vickery Article"). The Vickery Article is

23   based on data that Vickery—as an agent of Kromtech—unlawfully obtained from

24   River City's servers and networks during a months-long hacking campaign.

25   Complaint, ECF No. 1, at 7–11. Vickery also shared River City's data with

26   Defendants Steve Ragan, CXO Media, LLC, and IDG, Inc., leading to the

27   publication of Steve Ragan's article and the resultant damages. *Id.* at 11–13.

28      By employing Vickery and providing him with a mandate and platform on

PLAINTIFFS' OPP. TO DEFENDANT
KROMTECH'S MOTION TO DISMISS - 2
[2:17-cv-00105]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

which to publicize his illegal hacking, Kromtech is directly responsible for Plaintiffs' damages. Acting on behalf of Kromtech, Vickery stole, analyzed, and published nearly all of River City's sensitive and proprietary data. *Id*. Based on that data, Vickery then spread false, defamatory, and reputation-ruining information about River City on the website, MacKeeper.com, which is owned, operated, and sponsored by Kromtech. *Id*. at 11–13.

Kromtech's primary issue concerns whether Vickery was its agent during the hacking campaign. ECF 41 at 3. But Kromtech hired Vickery precisely for his ability to hack into computer networks and expose security "weaknesses". *See* Complaint, ECF No. 1 at 6. In fact, Kromtech—a software company that sells security products—hired Vickery after he exposed Kromtech's own security flaws. Complaint, ECF No. 1 at 5–6. By hiring Vickery to expose and write about other security flaws, Kromtech draws even more potential customers to its site, where it can advertise and sell its security products and services.

Kromtech also contends that this Court lacks jurisdiction over it. But Kromtech has substantial ties to Washington. First—and until one month ago— Kromtech hosted its websites, www.mackeeper.com and www.kromtech.com, on an Amazon Web Services server located in Washington. Declaration of Jason Bernstein ("Bernstein Decl.") at ¶ 2. Kromtech continues to use Amazon's web hosting services. *Id*. at ¶ 3. Kromtech also advertises its products and services in Washington newspapers, including on www.seattlepi.com. *Id*. at ¶ 4. Finally, Kromtech released an advertisement and press release on June 8, 2017, on a Spokane-area news site. *Id*. at ¶ 5. Kromtech's claim to have no affiliation or ties to Washington is unsupported by the facts.

The record also proves that Vickery—and thus Kromtech—knew that Plaintiffs operated out of Washington and that the harm would be felt here:

1. Multiple documents posted publicly by Defendant Steve Ragan ("Ragan") and Vickery include address information for River City and its associated

1    business partners (Ferris Decl., ECF No. 25, ¶¶ 25, 26, 29);

2    2. In their articles, both Vickery and Ragan referred to Plaintiff Matt Ferris's

3        Eastern Washington location (Ferris Decl., ECF No. 25, ¶ 31); and

4    3. Vickery and Ragan had access to extensive IP address data, much of which

5        pointed to Spokane (Ferris Decl., ECF No. 25, ¶ 29)—for example,

6        Ragan's article refers to TierPoint, an ISP, as being the only connection to

7        the internet for Cyber World Internet Services (an entity linked to River

8        City), both of which had Spokane IP addresses (*id.*);

9    4. The actual data that Ragan helped analyze was rife with references to

10       Washington, indicating that the data itself likely came from Washington

11       computers. *Id.*

12       Despite knowing Plaintiffs' locations, Kromtech (and Vickery) continued to

13   attack their reputations in Washington, where it could cause the most harm. For

14   example, because of actions taken by Kromtech, its co-defendants, and Spamhaus,

15   River City's internet service provider was coerced into dropping River City from

16   its network. Ferris Decl., ECF No. 25, ¶ 32; Ferris Decl. Ex. 5 ("TierPoint clipped

17   the cord and disconnected [River City's] servers sometime on Tuesday"). River

18   City even lost its physical offices because they were located in TierPoint's facility,

19   which (without internet access) became useless to Plaintiffs. Ferris Decl., ECF No.

20   25, ¶ 33.

21       Plaintiffs' reputational injury also extended beyond Washington, just as

22   Defendants had hoped. As reported by Defendant CXO Media and Ragan, "one of

23   the largest marketing firms working with [River City] … dropped [it] from their

24   affiliate service." Ferris Decl., ECF No. 25, Ex. 5. Based on Ragan's article,

25   Spamhaus also summarily blacklisted domain registrars affiliated with River City.

26   Ferris Decl., ECF No. 25, ¶ 34. This resulted in a near-cessation of business

27   activity. Ferris Decl., ECF No. 25, ¶ 35.

28       River City's physical and logical network infrastructure—largely located in

PLAINTIFFS' OPP. TO DEFENDANT
KROMTECH'S MOTION TO DISMISS - 4
[2:17-cv-00105]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

Washington—also suffered serious damage. Vickery intentionally deleted critical databases and sent remote commands that shut down or destroyed River City's key technical infrastructure. Complaint, ECF No. 1 at 8–10.

Because of the loss of income and business resulting from the cyberattack and the Ragan and Vickery articles, River City had to lay off 14 employees and contractors and shutter four businesses, which in turn caused three additional businesses to close. Ferris Decl., ECF No. 25, ¶ 36.

## III. DISCUSSION

**A.   This Court may exercise specific personal jurisdiction over Kromtech because it purposefully targeted River City's Washington-based business and then published a defamatory article directed to Washington citizens and businesses, which resulted in the near-total destruction of River City's reputation and business in Washington.**

Washington federal courts use the state's long-arm statute to determine whether they may exercise jurisdiction over out-of-state persons. RCW 4.28.185(1); *Chan v. Soc. Expeditions, Inc.*, 39 F.3d 1398, 1405 (9th Cir. 1994). The Court may exercise specific jurisdiction over a defendant "where the nature and quality of the defendant's contacts with the forum state are significant in relation to the specific cause of action." *Greystone Housing Foundation, Inc. v. Fantasy Holdings, LLC*, 2017 WL 2123620, at *5 (S.D. Cal. May 16, 2017).

The Ninth Circuit uses a three-prong test for determining specific jurisdiction. *Id.* First, the "non-resident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986). Second, the plaintiff's claims "must arise out of or result from the defendant's forum-related activities." *Id.* Finally, the Court determines if the exercise of specific personal jurisdiction would "comport with traditional notions of fair play and substantial justice." *Int'l Shoe*

PLAINTIFFS' OPP. TO DEFENDANT
KROMTECH'S MOTION TO DISMISS - 5
[2:17-cv-00105]

**NEWMAN DU WORS LLP**

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1  *Co. v. Washington*, 326 U.S. 310, 320 (1945).

2      The Supreme Court's ruling in *Walden v. Fiore* focuses this Court's inquiry on

3  defendant's contacts with Washington and clarifies that personal jurisdiction does

4  not arise merely as a result of defendant's contacts with persons—even the

5  plaintiffs—who reside there. 134 S.Ct. 1115, 1122 (2014).

6      Where, as here, the parties use affidavits to establish the factual bases for

7  personal jurisdiction, plaintiffs need only demonstrate facts that, if true, would

8  support jurisdiction. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001)

9  (overruled on other grounds by *Daimler AG v. Bauman*, 134 S.Ct. 746, 760 (2014)).

10  Any uncontroverted allegations in the complaint must be taken as true and conflicts

11  between parties' affidavits are resolved in plaintiff's favor. *Gordon v. Ascentive,*

12  *LLC*, No. CV-05-5079-FVS, 2005 WL 3448025, at *1 (E.D. Wash. Dec. 15, 2005).

13  The Court should construe all evidentiary materials in the light most favorable to

14  River City. *Id.*

15      The Court should deny Kromtech's motion to dismiss for lack of personal

16  jurisdiction because (1) Kromtech purposefully directed activities at Washington;

17  (2) Plaintiffs' claims arise out of Kromtech's Washington-related activities; and

18  (3) the exercise of personal jurisdiction over Kromtech is reasonable and comports

19  with due process.

20      **1.    Kromtech purposefully directed its activities at Washington by (1)**
21      **committing multiple intentional acts that (2) were expressly aimed at**
22      **Washington and that (3) caused harm Kromtech knew would likely**
       **be suffered in Washington.**
23

24      In deciding whether a defendant purposefully directed its activities at a forum

25  state, the Ninth Circuit applies the "effects" test derived from *Calder v. Jones*, 465

26

27

28

PLAINTIFFS' OPP. TO DEFENDANT
KROMTECH'S MOTION TO DISMISS - 6
[2:17-cv-00105]

**NEWMAN DU WORS LLP**

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

U.S. 783 (1984).[1] *See LG Corporation v. Huang Xiaowen*, 2017 WL 2504949, at *3 (S.D. Cal. June 8, 2017). The effects test "requires that the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1077 (9th Cir. 2011) (internal quotation marks omitted).

**Intentional Acts**

The first prong of the test is satisfied because Kromtech intentionally published a defamatory article based upon data that its agent, Chris Vickery, obtained unlawfully. Publishing an allegedly defamatory article qualifies as an intentional act. In fact, *Calder* itself involved an allegedly defamatory article published in a nationally-circulated magazine. *See Calder*, 465 U.S. at 783.

Kromtech disputes that it published the Vickery Article, arguing that it was *Vickery's* intentional act, *not* Kromtech's, because Kromtech maintained no "editorial control" over Vickery's blog. ECF No. 41 at 9. Yet Kromtech admits that it owns MacKeeper.com (ECF No. 42 at ¶ 3) and that it intentionally hired Vickery to write and publish data breach articles on the "MacKeeper Security Blog." *Id.* at ¶ 6.

Kromtech even requires Vickery to obtain its consent before speaking to the media about MacKeeper.com. ECF No. 42-1 (Kromtech-Vickery Services Agreement). Kromtech also requires Vickery to communicate on behalf of

---

[1] *See Greystone*, 2017 WL 2123620, at *5. Courts use "purposeful availment" for suits sounding in contract and "purposeful direction" for suits sounding in tort. Id. Because River City's claims sound entirely in tort, this Court applies a purposeful direction analysis.

MacKeeper as the MacKeeper Security Researcher. *Id.* Setting aside the conclusory and unsupported statements of its CEO (ECF No. 41 at 9), Kromtech offers no evidence to suggest it should not be held liable for publishing the Vickery Article.

### Expressly Aimed at Washington

There is also no question that Kromtech "expressly aimed" its conduct at Washington, thereby satisfying the second prong of the "purposeful direction" analysis. While the Ninth Circuit lacks any clear rules for internet cases, this is hardly an issue of first impression. While "maintenance of a passive website alone cannot satisfy the express aiming prong," *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010), operating a passive website "in conjunction with 'something more'—conduct directly targeting the forum—is sufficient." *Rio Props, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002). Factors considered in determining whether a defendant has done "something more" include: (a) the interactivity of the defendant's website, *see Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1153–54 (9th Cir. 2006); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 417–20 (9th Cir. 1997); (b) the geographic scope of the defendant's commercial ambitions, *e.g., Pebble Beach*, 453 F.3d at 1156–58; *Rio Props*, 284 F.3d at 1020–21; and (c) whether the defendant "individually targeted" a plaintiff known to be a forum resident, *e.g., Brayton Purcell*, 606 F.3d at 1129; *Pebble Beach*, 453 F.3d at 1156–57; *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321–22 (9th Cir. 1998).

Kromtech's acts were "expressly aimed" at Washington. MacKeeper.com is, of course, accessible in Washington. It is also interactive—users may leave comments, "recommend" articles, sign up for Kromtech's mailing lists (obtaining a 15% discount on Kromtech's products), and actually purchase Kromtech's security-related products. Bernstein Decl. at ¶ 6. Kromtech's choice of advertising targets also shows its desire to seek commercial gain from Washingtonians—it

PLAINTIFFS' OPP. TO DEFENDANT
KROMTECH'S MOTION TO DISMISS - 8
[2:17-cv-00105]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

displays ads at www.seattlepi.com and the Spokane-area news site, www.khq.com. *Id.* at ¶¶ 4–5. This advertising is not "random," "fortuitous," or "attenuated." *See Burger King v. Rudzewicz*, 471 U.S. 462, 486 (1985). Instead, "consumption [of its content and products] was a predictable consequence of [Kromtech's] business model." *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 926 (2011) ("[W]here the sale of a product arises from the efforts of the manufacturer or distributor to serve … the market for its product in [several] States, it is not unreasonable to subject it to suit in one of those states if its allegedly defective merchandise has there been the source of injury to its owner or to others."). Though not directly applicable to this analysis, Kromtech even contracts with Washington's Amazon.com to host and support both MacKeeper.com and Kromtech.com. Bernstein Decl. at ¶ 3.

### Caused Acute Harm in Washington

Kromtech satisfies the last prong of the purposeful direction test because it caused harm that was felt most acutely in Washington. The effects of the Vickery Article's defamatory statements— published on Kromtech's website and read by potentially thousands of Washingtonians—are undisputed. As Kromtech and Vickery hoped, their news article and false statements forced River City to drastically curtail its business operations. Ferris Decl., ECF No. 25, ¶¶ 32–36. River City lost its lease in a Liberty Lake, Washington office building and was forced offline because of pressure put on its Spokane-based internet service providers. *Id.* at ¶¶ 32–33.

Vickery and Kromtech knew that an article about a Spokane-based business would be most interesting to Washington readers and deliberately exploited Washington markets by publishing the Vickery Article on the MacKeeper Security Blog. In both *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984) and *Calder v. Jones*, 465 U.S. 783, 788–89 (1984), the Supreme Court affirmed personal jurisdiction of forum states where allegedly libelous and defamatory articles were

PLAINTIFFS' OPP. TO DEFENDANT
KROMTECH'S MOTION TO DISMISS - 9
[2:17-cv-00105]

**NEWMAN DU WORS LLP**

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1  published as part of a nationwide magazine circulation but based on information

2  from and felt most keenly in the forum state. In *Keeton*, a resident of New York

3  brought a libel suit against an Ohio-based magazine publisher in a New Hampshire

4  federal district court based solely on the publisher's sale of 10,000 to 15,000 copies

5  of its nationally published magazine in New Hampshire. *See* 465 U.S. at 770–71.

6  The Supreme Court found sufficient minimum contacts based on the regular

7  circulation of magazines in the forum state.

8      Similarly, in *Calder v. Jones*, a professional entertainer sued two

9  newspapermen in a California court for an article written and edited in Florida, but

10 circulated nationally. *See* 465 U.S. 783. The Supreme Court found that the

11 newspapermen obtained information from California and then expressly aimed

12 their article at California because they knew that the brunt of plaintiff's injury

13 would be felt in California, where she lived and worked. *Id*. at 789–90.

14     Just as in *Calder*, Kromtech knew or should have known that the Vickery

15 Article and the data Vickery used to write it came from Washington. 465 U.S. at

16 778. Most significantly—and almost *exactly* as in *Calder*—the "brunt of the harm,

17 in terms of both emotional distress and the injury to professional reputation" was

18 suffered in Washington. *Calder*, 465 U.S. at 778–89. Given the many references to

19 Washington, Defendants knew or should have known that Washington was—and

20 is—the "focal point both of the story and of the harm suffered." *Id*. at 789.

21     The Supreme Court recently clarified personal jurisdiction in *Walden v. Fiore*.

22 134 S.Ct. 1115 (2014). The *Walden* Court generally discussed *Calder* with approval,

23 and explained that the "crux of *Calder* was that the reputation-based 'effects' of

24 the alleged libel connected the defendants to California, not just to the plaintiff."

25 *Walden*, 134 S.Ct. at 1123–24. But for the obvious differences in technology, the

26 facts here are nearly identical—*Calder* involved a nationally-circulated paper

27 magazine whereas MacKeeper.com is (and seeks to be) a nationally-read website

28 and supplier of Mac security software.

PLAINTIFFS' OPP. TO DEFENDANT
KROMTECH'S MOTION TO DISMISS - 10
[2:17-cv-00105]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

Succinctly put, this Court has personal jurisdiction over Kromtech because its "suit-related conduct" created minimum contacts with Washington that are not solely related to Plaintiffs. Kromtech deliberately exploits the Washington market for security news and software. It targets Washington by purchasing ads on the Seattle Post-Intelligencer and Spokane-area news websites. As in *Calder*, the reputational injury caused by the Vickery Article "would not have occurred but for the fact that the defendants wrote an article for publication in [Washington] that was read by a large number of [Washingtonians]." *Walden*, 134 S.Ct. at 1124. Kromtech, for a wide variety of reasons, has submitted to the personal jurisdiction of this state.

**2. River City satisfies the second prong of the Ninth Circuit's specific personal jurisdiction analysis because River City's claims arise out of and directly result from Kromtech's forum-related activities.**

"The tort of libel is generally held to occur wherever the offending material is circulated." *Keeton*, 465 U.S. at 777. There is no dispute that the offending material in this case was circulated in Washington, which is exactly where Plaintiffs' reputation and interests suffered the most harm.

The facts alleged in the Complaint match those of *Calder*. As the *Walden* Court explained, "the effects caused by defendants' article—*i.e.*, the injury to the plaintiff's reputation in the estimation of the California public—connected the defendants' conduct to *California*, not just to a plaintiff who lived there." *Walden*, 134 S.Ct. at 1124. Similarly, Kromtech's publication of the Vickery Article connects its conduct to *Washington* and not just to Plaintiffs who happen to be here. Plaintiffs' claims and this litigation are therefore a direct result of the harm caused by Kromtech's acts—acts which serve to connect them to the forum state.

**3. This Court's exercise of specific personal jurisdiction over Kromtech is reasonable and comports with traditional notions of fair play and substantial justice.**

PLAINTIFFS' OPP. TO DEFENDANT
KROMTECH'S MOTION TO DISMISS - 11
[2:17-cv-00105]

**NEWMAN DU WORS LLP**

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1    Courts must balance seven factors in evaluating whether the exercise of

2    personal jurisdiction is "reasonable:" (1) the extent of the defendants' purposeful

3    interjection into the forum state's affairs; (2) the defendant's burden of defending

4    in the forum; (3) the extent of conflict with the sovereignty of the defendants'

5    state; (4) the forum state's interest in adjudicating the dispute; (5) the most

6    efficient judicial resolution of the controversy; (6) the importance of the forum to

7    the plaintiff's interest in convenient and effective relief; and (7) the existence of an

8    alternative forum. *Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.*, 1 F.3d 848, 851 (9th

9    Cir. 1993).

10    Each factor weighs in favor of exercising personal jurisdiction over Kromtech:

11    1.  **Purposeful interjection:** Kromtech purposefully interjected itself into

12        Washington's affairs by engaging in commercial activities directed at the

13        State, including signing business-critical contracts with Amazon.com,

14        advertising its website, products, and services on local websites, and

15        publishing a defamatory article that (1) caused immense harm to a

16        Washington business and (2) necessarily interested Washington readers

17        other than Plaintiffs.

18    2.  **Relative burden:** Defending the case in Washington will not cause

19        significant burden because (1) Kromtech has already retained local

20        counsel and (2) the internet permits efficient litigation in this forum. *See*

21        *In re Cathode Ray Tube (CRT) Antitrust Litigation*, 27 F. Supp. 3d 1002,

22        1014 (N.D. Cal. 2014) (noting that "modern technology" helped ensure

23        that evidentiary matters in case involving many foreign parties was

24        "handled efficiently"). Indeed, just as Kromtech employed modern

25        technology to destroy Plaintiffs' business, it can employ modern

26        technology to efficiently defend itself. Moreover, Kromtech is an

27        international company, incorporated in the British Virgin Islands, based

28        in Dubai, and with offices located in Germany, Louisiana, and Ukraine.

PLAINTIFFS' OPP. TO DEFENDANT
KROMTECH'S MOTION TO DISMISS - 12
[2:17-cv-00105]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1  Litigating this case in any of those venues is much more burdensome to

2  Plaintiffs—whose business has nearly collapsed. Plaintiffs have no

3  counsel immediately available in any of those locations and would need to

4  transport all evidence and witnesses there. By contrast, Kromtech merely

5  asserts, without explanation, that it would be "extremely onerous for

6  Kromtech" to litigate in Washington. The only "evidence" provided is a

7  conclusory statement from its own CEO.

8  3.  **Washington's significant interest:** Washington has a significant interest

9  in adjudicating this dispute because of the harm to the Washington

10  economy. Plaintiffs employed individuals in Washington and had no

11  choice but to terminate those employees because of Kromtech's actions.

12  It does not even matter that River City is incorporated in Washington—in

13  *Keaton*, for example, the plaintiff had no connection to the forum state at

14  all, other than a desire to benefit from that state's longer-than-typical

15  statute of limitation. Plaintiffs' connections to Washington are real,

16  tangible, and the harm caused to their business directly impacted

17  Washington residents and the Washington economy.

18  The remaining factors all weigh in favor of adjudicating the case in

19  Washington. The Complaint includes multiple state-law causes of action. *See*

20  Complaint, ECF No. 1, Causes of Action Five–Ten. River City and the individual

21  Plaintiffs live and are attempting to rebuild their business in Washington.

22  Kromtech—and all other Defendants—have been served with summonses issued

23  from this Court. And there is no clear alternative given Plaintiffs' locations and the

24  disparate locations of the other Defendants. In fact, given the reach created by the

25  internet, there may not be any single, ideal venue for this case to be litigated.

26  Judicial efficiency also weighs in favor of this Court exercising jurisdiction over

27  Kromtech—more witnesses and physical evidence are within Washington or close

28  to it. The same is not true of any other possible venue suggested by Kromtech or

PLAINTIFFS' OPP. TO DEFENDANT
KROMTECH'S MOTION TO DISMISS - 13
[2:17-cv-00105]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

the other Defendants.

**B. Because he is its agent, Kromtech can be held responsible for Vickery's unlawful hacking campaign.**

The Ninth Circuit recognizes the potential for finding *specific* jurisdiction under general theories of agency. *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1024–25 (9th Cir. 2017). "Fundamental tenets of agency theory require that an agent act on the principal's behalf and subject to the principal's control." *Id*. at 1024 (quoting Restatement (Third) of Agency § 1.01 (2006)). To determine whether an agency relationship exists, a court must look at the spirit of the agreement between parties. *Kelsey Lane Homeowners Ass'n v. Kelsey Lane Co., Inc.*, 125 Wash. App. 227, 235–36 (2005). When a party asserts its status as an independent contractor rather than as an agent, it has the burden to show the parties' true relationship. *Id.* And unless the facts are undisputed or permit only one conclusion, agency is generally a question of fact reserved for the jury. *Id.*

Under traditional theories of respondeat superior, an employer is vicariously liable to third parties for torts committed by its servant within the scope of employment. *Wilcox v. Basehore*, 187 Wash.2d 772, 783 (2017). In Washington, vicarious liability can also extend to a principal who is accountable for the actions of a non-employee agent. *Id*. at 789. Though the principal's exercise of control is considered, "actual exercise of control is not necessary so long as the principal had the right to control the details of the agent's performance." *Id.* This depends on "the parties' contract, the parties' conduct, and other relevant factors." *Afoa v. Port of Seattle*, 160 Wash. App. 234, 239 (2011).

Kromtech argues that Vickery is just an independent contractor and that it lacked the ability to control his performance. But Kromtech downplays its authority to direct Vickery. First, Kromtech controlled Vickery's title, dictating that he must refer to himself as "the MacKeeper Security Researcher" when communicating on behalf of Kromtech. ECF No. 42-1 at 7. Second, Kromtech

PLAINTIFFS' OPP. TO DEFENDANT
KROMTECH'S MOTION TO DISMISS - 14
[2:17-cv-00105]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1  dictated the number and type of articles that Vickery would write each month. *Id.*

2  Third, Kromtech dictated how and when Vickery communicated with the media,

3  which was a significant portion of his value to Kromtech. *Id.* ("Contractor may

4  communicate with press regarding MacKeeper only after consent by the Client.")

5  Kromtech cites extensively to *Figi Graphics, Inc. v. Dollar Gen. Corp.*, 33 F.

6  Supp. 2d 1263 (S.D. Cal. 1998) to argue that Kromtech lacks the requisite "degree

7  of control" over Vickery's actions. But Kromtech's reliance on *Figi* is misplaced.

8  First, the alleged agency relationship in *Figi* was between a retailer and an importer

9  who happened to be based in California, where the plaintiff attempted to bring suit

10 for copyright and trademark infringement. *Figi*, 33 F. Supp. 2d at 1265–66. The

11 plaintiff argued that defendant's use of the importer was enough to create an

12 agency relationship and thus exercise personal jurisdiction over defendant based

13 only on the importer's California residence. The only contract between importer

14 and defendant was a standard form import order form, likely used by importer with

15 all of its customers.

16 By contrast, Kromtech's contract with Vickery gives Kromtech substantial

17 control over his actions and work. ECF No. 42-1. As described, the contract

18 specifies the number and type of articles to be produced on a monthly basis,

19 requires Vickery to communicate on behalf of Kromtech as the "MacKeeper

20 Security Researcher," and specifies the hours that Vickery spends on security

21 consultation with Kromtech. Critically, the contract also requires that Vickery seek

22 Kromtech's consent to communicate with the press about MacKeeper. Given that

23 generating press and attention is a primary goal of a blog about security breaches,

24 the contract, in fact, gives Kromtech considerable control over Vickery's day-to-

25 day activities. Whether that control is exercised is immaterial. *Wilcox*, 187 Wash.2d

26 at 789–90.

27 **C.   Kromtech is not entitled to its attorney's fees.**

28 Kromtech's request for attorney's fees should be denied. RCW 4.28.185 (5)

PLAINTIFFS' OPP. TO DEFENDANT
KROMTECH'S MOTION TO DISMISS - 15
[2:17-cv-00105]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

allows a trial court to award attorney's fees to a prevailing out-of-state defendant who was personally served outside Washington. But Kromtech has not prevailed. First, as established, this Court may reasonably exercise personal jurisdiction over Kromtech consistent with Due Process.

Second, even if this Court grants Kromtech's motion, this Court need not award attorney's fees. Fees under RCW 4.28.185 (5) are within the sound discretion of the trial court. *See Park Hill Corp. v. Don Sharp, Inc., Better Homes and Gardens*, 60 Wash. App. 283, 288–89 (1991) (affirming denial of attorney's fees because action was not frivolous and not brought to harass defendants, among other reasons) (overruled on other grounds by *Thompson v. Hanson*, 168 Wash.2d 738 (2009)).

River City's claims are not frivolous. Kromtech caused harm here and River City's damages are felt here. Suing Kromtech where the harm was felt comports with traditional pleading practices.

### D. Plaintiffs sufficiently state claims for relief against Kromtech.

The Federal Rules of Civil Procedure require a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). To survive a motion to dismiss, a complaint must contain "sufficient factual matter" to state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rule 8 does not require "detailed factual allegations". *Iqbal*, 556 U.S. at 678.

The Complaint satisfies this standard. It does not rely upon a mere "formulaic recitation of the elements of a cause of action." *Id*. Instead, the Complaint contains well-plead allegations of wrongdoing. *Id.* And it connects Kromtech to that wrongdoing as Vickery's employer and publisher. *See* Complaint ¶¶ 30-31, 65. These allegations present more than sufficient factual matter to state plausible claims against Kromtech. *See Iqbal*, 556 U.S. at 678. Even if the Court finds the claims "improbable," it should allow suit to proceed. *See Twombly*, 550 U.S. at 556.

PLAINTIFFS' OPP. TO DEFENDANT
KROMTECH'S MOTION TO DISMISS - 16
[2:17-cv-00105]

**Newman Du Wors LLP**

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

**1.  Plaintiffs' claims against Kromtech for violations of the CFAA should not be dismissed because they sufficiently allege Kromtech's liability, and link Vickery's actions directly to Kromtech.**

Kromtech offers only one challenge to Plaintiffs' claim for violations of the Computer Fraud and Abuse Act ("CFAA")—that Kromtech cannot be liable for Vickery's actions. *See* Opp. at 11-12. But the Complaint sufficiently alleges an agency relationship between Vickery and Kromtech. Specifically, it states that:

1. Kromtech owns and operates the website MacKeeper.com, on which Vickery posted his article. *See* Complaint ¶¶ 21, 29, 65. Kromtech admits this fact. *See* Opp. at 2; Sosniak Decl. ¶ 6.

2. Kromtech employed Vickery as a "security researcher" at the time of the attack on Plaintiffs—the very job Vickery claims to have been doing when he "stumbled upon" the data that he hacked. Complaint ¶¶ 28, 65

Kromtech's self-serving claims that Vickery had "full autonomy" over his actions and his Article are not sufficient to negate Plaintiffs' well-pled allegations on a motion to dismiss.

If that were not enough—separate and apart from the liability imposed by an agency relationship—the Vickery Article *directly* links the CFAA violations to Kromtech. The Article claims that the information therein was compiled by "[a] cooperative team of investigators from the MacKeeper Security Research Center, CSOOnline, and Spamhaus" . Vickery Article, https://mackeeper.com/blog/post/339-spammergate-the-fall-of-an-empire; Complaint ¶¶ 65. In other words, Vickery published information provided to him by *Kromtech's* "team of investigators" from *Kromtech's* Research Center.

Kromtech nevertheless insists that Plaintiffs should not be permitted to maintain their CFAA claim against Kromtech. Opp. at 11. But the parties have yet to exchange any discovery. And the cases cited by Kromtech do not support a pleading stage dismissal.

PLAINTIFFS' OPP. TO DEFENDANT
KROMTECH'S MOTION TO DISMISS - 17
[2:17-cv-00105]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

For example, the court in *Calence, LLC v. Dimension Data Holdings* granted *summary judgment* because the corporate defendant did not direct the individual defendants to take their allegedly unlawful actions. *Calence, LLC v. Dimension Data Holdings*, No. C06-0262RSM, 2007 U.S. Dist. LEXIS 38043, at \*15-16 (W.D. Wash. May 24, 2007). The *Calence* court came to this conclusion only after a review of the entire record developed during discovery—not on a motion to dismiss. *Compare* Fed. R. Civ. P. *56 with Twombly*, 550 U.S. at 556.

Similarly, in *Butera & Andrews v. International Business Machines Corp.*, 456 F. Supp. 2d 104, 113 (D.D.C. 2006), the court granted *summary judgment* because the record did not contain evidence that the corporate defendant "tacitly knew and approved of the conduct allegedly engaged in by its employees or agents." *Id.*

Though the pleadings are not yet closed, discovery will likely reveal Kromtech's "tacit knowledge and approval" and/or "direction" of Vickery's actions. Indeed, there is no doubt that:

1. Vickery was employed by Kromtech as a "security researcher;"

2. Part of Vickery's job was publishing the offending blog on Kromtech's website; and

3. Vickery specifically lauds the "team" of "investigators" from Kromtech with whom he worked to undermine and harm River City.

Plaintiffs should be permitted to go forward with this claim to determine the extent of Kromtech's direction of Vickery.

## 2. Plaintiffs state claims for violations of the Stored Communications Act and the Electronic Communications Privacy Act.

Kromtech offers three reasons why the Stored Communications Act ("SCA") claim fails: 1) the records at issue are not "communications;" 2) the computers at issue are River City's and not a third party's; and 3) the data was not in "electronic storage." Opp. at 12-13. Kromtech also asserts that the violations of the Electronic Communications Privacy Act ("Wiretap Act") fail because no "communications"

PLAINTIFFS' OPP. TO DEFENDANT
KROMTECH'S MOTION TO DISMISS - 18
[2:17-cv-00105]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

were intercepted "using a device" that is "separate from Plaintiffs' own 'private computer network.'" Opp. at 15. Each of these arguments either ignores the allegations in the Complaint or implies limitations into the Complaint that simply are not there.

First, there is no doubt that Defendants intercepted Plaintiffs' communications. Once Defendants gained access to River City's systems, they located and used River City's credentials for its "company email accounts," "its Hipchat accounts," and "its email service provider accounts." Complaint ¶ 57. These are all "communications" protected by the SCA. *See Ehling v. Monmouth-Ocean Hosp. Serv. Corp.*, 961 F. Supp. 2d 659, 667 (D.N.J. 2013) ("[T]he SCA covers: (1) electronic communications, (2) that were transmitted via an electronic communication service, (3) that are in electronic storage, and (4) that are not public.).

Second, River City does not store its communications on its own computers. Instead, River City's "systems"—including email and Hipchat—are largely stored in a third-party cloud storage. As such, when Defendants hacked River City's communications, they accessed these communications in a third party's system. That system was used exactly as intended: for storage. *See* 18 U.S.C. § 2510(14).

Any communications that were accessed prior to delivery to their recipient fall within subsection (A) of 18 U.S.C. § 2701(a)(1). *See Theofel v. Farey-Jones*, 359 F.3d 1066, 1075 (9th Cir. 2004), citing *In re DoubleClick, Inc. Privacy Litig.,* 154 F.Supp.2d 497, 512 (S.D.N.Y.2001); *Fraser v. Nationwide Mut. Ins. Co.,* 135 F.Supp.2d 623, 636 (E.D.Pa.2001). And any communications that were being stored in the cloud as backup fall within the definition of "electronic storage" in 18 U.S.C. § 2510(17)(B). *Theofel*, 359 F.3d at 1075. As such, Plaintiffs have sufficiently stated claims for violations of the SCA and the Wiretap Act.

### 3. Plaintiffs adequately plead violations of the Defend Trade Secrets Act.

PLAINTIFFS' OPP. TO DEFENDANT
KROMTECH'S MOTION TO DISMISS - 19
[2:17-cv-00105]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

Kromtech also attacks the adequacy of Plaintiffs' trade secret claims. Yet the Complaint provides an in-depth description of the multiple steps Plaintiffs took to protect their electronically stored trade secrets. Plaintiffs used Google Scripts to identify login challenges. Complaint ¶ 42. They examined the IP addresses of computers connecting to their network. *See* Complaint ¶ 45. They secured their network assets with Access Control Lists. *See* Complaint ¶ 46. They logged the activities of Vickery. *See* Complaint ¶ 50. They used a Zabbix server to monitor their network for possible irregularities and intruders. *See* Complaint ¶ 51. And they did all they could to investigate Defendants' hacking campaign. *See* Complaint ¶ 55.

The Complaint also adequately alleges that the information was valuable and that the trade secrets belong to Plaintiffs. *See* Complaint ¶¶ 107, 108. Plaintiffs further allege that "tens of thousands of confidential, proprietary, and sensitive business records" were stolen by Vickery. Complaint ¶ 85. This includes client records, email lists, and other sensitive business information used in interstate or foreign commerce. *See* Complaint ¶ 104. Plaintiffs also allege that Vickery undertook these actions personally, and *with the knowledge, approval and/or ratification of Kromtech*. *See* Complaint ¶ 104 (emphasis added). At base, the Complaint alleges all the required elements and sufficient facts to support each element.

### 4. Plaintiffs state a claim for invasion of privacy because Vickery hacked into River City's systems and intruded in the individual Plaintiffs' personal lives via their email and messages.

Kromtech also claims that the invasion of privacy claim must be dismissed because Plaintiffs have not pled a "deliberate intrusion" into "private affairs." As support, Kromtech repeats the argument that it cannot be liable for its employee/contractor's actions. Opp. at 16. But—as discussed above—this argument relies on the degree to which Kromtech participated in and knew about

PLAINTIFFS' OPP. TO DEFENDANT
KROMTECH'S MOTION TO DISMISS - 20
[2:17-cv-00105]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

the illegal computer hacking. And that is hotly contested—let alone immaterial to a 12(b)(6) motion.

The Complaint alleges that Kromtech hired Vickery to identify security vulnerabilities like the one he exploited at River City. *See* Complaint ¶¶ 28, 65. Kromtech owns and operates the website on which Vickery published his attack. *See* Complaint ¶ 21. And Vickery was aided by a "cooperative team of investigators from the MacKeeper Security Research Center…" Vickery Article, https://mackeeper.com/blog/post/339-spammergate-the-fall-of-an-empire; Complaint ¶ 65. These facts are sufficient to suggest Kromtech's liability.

Kromtech further claims that the Complaint lacks allegations that Vickery intruded into the private lives of the individual Plaintiffs. *See* Opp. at 16. But the Complaint alleges that Vickery intruded into Plaintiffs' email and Hipchat accounts *See* Complaint ¶¶ 57, 61. These allegations are sufficient to state a claim for invasion of privacy—an intrusion into the personal lives of the Individual Plaintiffs—and has a reasonable probability of being proven during discovery.

**5. Plaintiffs state claims for Intentional Interference with Contractual Relations and Business Expectancy.**

For its interference claims, Kromtech imposes a burden on Plaintiffs that does not exist. It claims that Plaintiffs must identify exactly what contracts were "lost" and that each "lost" contract was valid. *See* Opp. at 16. Kromtech cites no authority for this requirement. Indeed, there is none.

Kromtech also claims that the Complaint fails to allege knowledge of Plaintiffs' contractual relationships and business expectations. But Vickery began receiving stolen data in January 2017 and analyzed that data sufficiently to attack Plaintiffs on Kromtech's MacKeeper Blog. *See* Complaint ¶¶ 47-57. Vickery knew—and intended—that his article would disrupt Plaintiffs' business operations. Indeed, his blog states that "As of this morning, Spamhaus will be blacklisting RCM's entire infrastructure." Vickery Article,

PLAINTIFFS' OPP. TO DEFENDANT
KROMTECH'S MOTION TO DISMISS - 21
[2:17-cv-00105]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

https://mackeeper.com/blog/post/339-spammergate-the-fall-of-an-empire;
Complaint ¶ 65.

Kromtech also argues, once again, that it cannot be liable for Vickery's actions. Opp. at 17. But as discussed above, this self-serving statement is not a valid ground for dismissing the Complaint. For these reasons, Kromtech's motion to dismiss the Seventh and Eighth causes of action should fail.

### 6. The Federal Communications Decency Act does not protect Kromtech against liability for defamation.

While Kromtech also challenges Plaintiffs' defamation claim, it does not dispute the merits. Instead, Kromtech argues that it is entitled to immunity under the Federal Communications Decency Act ("CDA"), 47 U.S.C. § 230(c). Opp. at 18-19. The CDA provides "broad immunity" to online services that publish content "provided primarily by third parties." But the CDA does not protect Kromtech.

A defendant is entitled to immunity under CDA § 230(c) only if (1) it is a provider or user of an "interactive computer service," (2) the plaintiff's claim treats it as a publisher or speaker of information, and (3) that information is provided or developed by another "information content provider." *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 830 (2002) (eBay not liable for "dissemination of representations made by the individual defendants, or the posting of compilations of information generated by those defendants and other third parties"); 47 U.S.C. § 230(c).

Kromtech is not merely the "operator of a website" providing an "interactive computer service." It is nothing like Yelp!, Facebook, or an internet message board operator, which exemplify the "interactive computer services" exempted from the CDA. *See Kimzey v. Yelp! Inc.,* 836 F.3d 1263 (9th Cir. 2016) (Yelp! immune from liability for defamatory reviews posted on site); *Klayman v. Zuckerberg*, 753 F.3d 1354 (D.C. Ct. App. 2014), certiorari denied 135 S.Ct. 680, 190 L.Ed.2d 391

PLAINTIFFS' OPP. TO DEFENDANT
KROMTECH'S MOTION TO DISMISS - 22
[2:17-cv-00105]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

(Facebook immune from liability for users' posts.); *Universal Communication Systems, Inc. v. Lycos, Inc.*, 478 F.3d 413 (1st Cir. 2007) (internet message board operator immune from liability for postings by users.) Instead, Kromtech publishes information on its website after soliciting requests for that information and paying researchers to obtain it. As such, it is not entitled to CDA immunity. *See F.T.C. v. Accusearch Inc.,* 570 F.3d 1187, 1199 (10th Cir. 2009) (website operator not immune from prosecution for information illegally obtained and sold by third parties on its website).

MacKeeper.com is the website through which Kromtech advertises and provides its flagship software, MacKeeper. *See* Opp. at 2 ("Kromtech develops security, maintenance, and optimization software applications for Mac computers, including the MacKeeper product, and sells those applications over the Internet."); Opp. at 9 ("Kromtech merely owns MacKeeper.com, which hosts a variety of pages about its products."). While Kromtech allegedly allows employees or contractors with its Security Research Center to post on its blog, it is *not* merely a "server that hosts the website." *See Universal Commcn'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 419 (1st Cir. 2007) ("Information content provider… is a broad definition, covering even those who are responsible for the development of content only "in part.") Instead, an *employee or contractor of Kromtech*, writing content for *Kromtech's website* on which it advertises and sells products, blatantly defamed Plaintiffs. *At the very least*, Kromtech's solicited the defamatory blog post by its paid "researcher" Vickery and thereby actively participated in the posting of content in a "forum that the company maintains." *See Huon v. Denton*, 841 F.3d 733, 742 (7th Cir. 2016), Kromtech cannot pretend to be merely a "host" and hide behind the CDA.

## IV. CONCLUSION

Kromtech hired, incented, and permitted Vickery to engage in a devastating hacking campaign against River City. That hacking campaign—and the subsequent

PLAINTIFFS' OPP. TO DEFENDANT
KROMTECH'S MOTION TO DISMISS - 23
[2:17-cv-00105]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

media attention—effectively destroyed what had been a successful Washington-based business. Kromtech benefited from its employment of Vickery and was unquestionably aware of his methods. Instead of controlling its dangerous employee, Kromtech published an article and basked in the attention it received from the media and security industry. Kromtech knew what it was doing and, through Vickery, who and where it was causing damage. Kromtech should not be permitted to avoid liability for destroying River City and harming Plaintiffs' reputations. The Court should deny Kromtech's request and allow River City to prove its case on the merits.

Respectfully submitted July 6, 2017.

**Newman Du Wors LLP**

Jason E. Bernstein, WSBA #39362
*jake@newmanlaw.com*
Leeor Neta, *admitted pro hac vice*
*leeor@newmanlaw.com*
2101 Fourth Avenue, Suite 1500
Seattle, WA 98121
(206) 274-2800

Attorneys for Plaintiffs

PLAINTIFFS' OPP. TO DEFENDANT
KROMTECH'S MOTION TO DISMISS - 24
[2:17-cv-00105]

**Newman Du Wors LLP**

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

# CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2017, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a notification of filing (NEF) to the following:

**Attorneys for Defendants International Data Group, Inc., CXO Media, Inc. and Steve Ragan**

Kevin J. Curtis
WINSTON & CASHATT, LAWYERS, a Professional Service Corporation
601 W. Riverside, Ste. 1900
Spokane, WA 99201
*kjc@winstoncashatt.com*

Charles L. Babcock
William J. Stowe
Jackson Walker L.L.P.
1401 McKinney Street, Suite 1900
Houston, TX 77010
*cbabcock@jw.com*
*wstowe@jw.com*

**Attorneys for Defendant Chris Vickery**

Aaron Rocke
101 Yesler Way, Suite 603
Seattle, WA 98104
*aaron@rockelaw.com*

Additionally, I caused true and correct copies of the foregoing to be served via first-class U.S. Mail, postage prepaid, with a courtesy copy by email to:

**Attorneys for Kromtech Alliance Corp.**
Matthew D. Brown
Cooley LLP
101 California Street, 5th Floor
San Francisco, CA 94111
*brownmd@cooley.com*

I declare under penalty of perjury that the foregoing is true and correct.

s/ Jason Bernstein
Jason Bernstein
Attorney for Plaintiffs

PLAINTIFFS' OPP. TO DEFENDANT
KROMTECH'S MOTION TO DISMISS - 25
[2:17-cv-00105]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800