1  COOLEY LLP
   MATTHEW D. BROWN (Cal. Bar No. 196972)
2  (brownmd@cooley.com) (*admitted pro hac vice*)
   AMY M. SMITH (Cal. Bar No. 287813)
3  (amsmith@cooley.com) (*admitted pro hac vice*)
   101 California Street, 5th Floor
4  San Francisco, CA 94111-5800
   Telephone: (415) 693-2000
5  Facsimile: (415) 693-2222

6  CHRISTOPHER B. DURBIN (WSBA No. 41159)
   (cdurbin@cooley.com)
7  1700 Seventh Avenue
   Suite 1900
8  Seattle, WA 98101-1355
   Telephone: (206) 452-8700
9  Facsimile: (206) 452-8800

10 Attorneys for Defendant
   KROMTECH ALLIANCE CORPORATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RIVER CITY MEDIA, LLC, a Wyoming limited liability company, MARK FERRIS, an individual, MATT FERRIS, an individual, and AMBER PAUL, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>KROMTECH ALLIANCE CORPORATION, a German corporation, CHRIS VICKERY, an individual, CXO MEDIA, INC., a Massachusetts corporation, INTERNATIONAL DATA GROUP, a Massachusetts corporation, and STEVE RAGAN, an individual, and DOES 1-50,<br><br>Defendants. | Case No. 2:17-cv-00105-SAB<br><br>**DEFENDANT KROMTECH ALLIANCE CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CLAIMS**<br><br>**FED. R. CIV. P. 8(a), 12(b)(2), 12(b)(6)**<br><br>Date: August 16, 2017<br>Time: 1:30 p.m.<br>Courtroom: 203<br>Judge: The Hon. Stanley A. Bastian<br>Trial Date: Not yet set |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................... 1

II. NO AGENCY RELATIONSHIP BINDS KROMTECH TO THE ALLEGED ACTS. ................................................................................... 1

III. THE COURT LACKS PERSONAL JURIDICTION OVER KROMTECH. ................................................................................................ 2

    A. Kromtech Did Not "Purposely Direct" Acts Toward Washington. ............................................................................... 2

    B. None of Kromtech's Forum-Related Acts Led to Plaintiffs' Claims. ......................................................................................... 4

    C. This Court's Exercise of Jurisdiction Would Be Unreasonable. .......... 5

IV. RULE 12(B)(6) REQUIRES DISMISSAL. ...................................................... 6

    A. Plaintiffs Waived Counts 8-9. ............................................................. 6

    B. The Remaining Causes of Action Also Fail. ...................................... 6

V. CONCLUSION ............................................................................................. 10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amoco Egypt Oil Co. v. Leonis Nav. Co.*,
  1 F.3d 848 (9th Cir. 1993) ........................................................................................... 6

*Backhaut v. Apple, Inc.*,
  74 F. Supp. 3d 1033 (N.D. Cal. 2014) ......................................................................... 8

*Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*,
  206 F.3d 980 (10th Cir. 2000) ................................................................................... 10

*Brayton Purcell LLP v. Recordon & Recordon*,
  606 F.3d 1124 (9th Cir. 2010) ..................................................................................... 3

*Bunnell v. Motion Picture Ass'n of Am.*,
  567 F. Supp. 2d 1148 (C.D. Cal. 2007) ....................................................................... 8

*Butera & Andrews v. IBM Corp.*,
  456 F. Supp. 2d 104 (D.D.C. 2006) ............................................................................. 7

*Calbom v. Knudtzon*,
  65 Wash. 2d 157 (1964) ............................................................................................... 9

*Calder v. Jones*,
  465 U.S. 783 (1984) ..................................................................................................... 4

*Callaway Golf Corp. v. Royal Canadian Golf Ass'n*,
  125 F. Supp. 2d 1194 (C.D. Cal. 2000) ....................................................................... 5

*Conservation Force v. Salazar*,
  677 F. Supp. 2d 1203 (N.D. Cal. 2009) ....................................................................... 6

*Cybersell, Inc. v. Cybersell, Inc.*,
  130 F.3d 414 (9th Cir. 1997) ....................................................................................... 2

*Dole Food Co. v. Watts*,
  303 F.3d 1104 (9th Cir. 2002) ................................................................................. 2, 3

*Fabbrini v. City of Dunsmuir*,
  544 F. Supp. 2d 1044 (E.D. Cal. 2008) ....................................................................... 6

*FTC v. Accusearch, Inc.*,
  570 F.3d 1187 (10th Cir. 2009) .................................................................................... 10

*Hadley v. Kellogg Sales Co.*,
  2017 WL 1065293 (N.D. Cal. Mar. 21, 2017) ................................................................ 6

*Huon v. Denton*,
  841 F.3d 733 (7th Cir. 2016) ........................................................................................ 10

*Keeton v. Hustler Magazine, Inc.*,
  465 U.S. 770 (1984) ....................................................................................................... 4

*Kosta Int'l v. Brice Mfg. Co.*,
  2014 WL 3847365 (W.D. Wash. Aug. 5, 2014) ............................................................. 2

*Life Designs Ranch, Inc. v. Sommer*,
  191 Wash. App. 320 (2015) ........................................................................................... 9

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
  647 F.3d 1218 (9th Cir. 2011) .................................................................................... 2, 3

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ......................................................................................... 4

*Walden v. Fiore*,
  134 S. Ct. 1115 (2014) ............................................................................................... 4, 5

*Wilcox v. Basehore*,
  187 Wash. 2d 772 (2017) ........................................................................................... 1, 2

*Yunker v. Pandora*,
  2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ................................................................ 8

**Other Authorities**

Local Rule 7.1(e) ................................................................................................................ 1

Restatement (Second) of Torts § 652I, Comment A ......................................................... 9

Def. Kromtech's Reply in Support of
Motion to Dismiss - iii

Cooley LLP

1700 Seventh Ave, Ste. 1900
Seattle, WA 98101-1355
(206) 452-8700

## I. INTRODUCTION

Kromtech's Motion to Dismiss (ECF No. 41 ("Mot.")) should be granted notwithstanding the scattershot arguments and new factual assertions raised in Plaintiffs' Opposition (ECF No. 49 ("Opp.")).[1]

## II. NO AGENCY RELATIONSHIP BINDS KROMTECH TO THE ALLEGED ACTS.

Plaintiffs' entire theory of liability against Kromtech depends on whether they adequately alleged that Defendant Chris Vickery was acting as Kromtech's agent when he allegedly engaged in the "unlawful hacking campaign." (Opp. 14.) Plaintiffs insist that Kromtech had "authority to direct Vickery" because the contract identified his title, the number and general types of articles he would write each month, and how he could communicate with the media about MacKeeper.[2] (Opp. 14-15.) But none of this shows that Kromtech had the right to "control the *details* of [Vickery's] work," the "most crucial factor" in distinguishing between a principal-agent relationship and an independent contractorship. *Wilcox v. Basehore*, 187 Wash. 2d 772, 789 (2017) (emphasis added). To the contrary, the contract establishes that Kromtech had only the right to expect Vickery's *end product* of two blog articles each month; it did *not* have the right to control details of his day-to-day activities as he worked to research and write those articles. (Mot.

---

[1] Plaintiffs filed a 24-page brief in violation of Local Rule 7.1(e).

[2] Plaintiffs claim Kromtech "requires Vickery to obtain its consent before speaking to the media about MacKeeper.com." (Opp. 7.) That is not true. Vickery needs Kromtech's consent to discuss *MacKeeper*, the product—*not* the MacKeeper.com website, which hosted the "Security Watch with Chris Vickery" blog. (Sosniak Ex. A (ECF No. 42-1 at 7).) Indeed, Vickery "may communicate with the press or other entities about subjects not related to MacKeeper without [Kromtech's] consent." (*Id.*) Vickery's work for the Vickery Article is unrelated to the MacKeeper product.

7-8; Sosniak Ex. A (ECF No. 42-1 at 7).) When there is no right to control the details of the work, the subordinate party is an independent contractor and the "principal who hires an independent contractor is not liable for harm resulting from the contractor's work." *Wilcox*, 187 Wash. 2d at 789. Vickery's alleged "hacking campaign" cannot be attributed to Kromtech.

### III. THE COURT LACKS PERSONAL JURISDICTION OVER KROMTECH.

#### A. Kromtech Did Not "Purposely Direct" Acts Toward Washington.

Plaintiffs' new factual assertions in their Opposition do not cure the Complaint's failure to establish that Kromtech committed any intentional act expressly aimed at Washington, or that Kromtech knew harm was "likely to be suffered" there. *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002); *Kosta Int'l v. Brice Mfg. Co.*, 2014 WL 3847365, at *4 (W.D. Wash. Aug. 5, 2014) (no jurisdiction where foreign defendant's contacts with Washington were "a result of the activities of a third party," not purposeful activity by the defendant).

***Kromtech did not expressly aim any intentional act at Washington.*** Plaintiffs claim that Kromtech "expressly aimed" actions at Washington because MacKeeper.com is an interactive website accessible in Washington, and Kromtech chose to advertise on two Washington news websites. (Opp. 7-9.) In cases involving defamatory statements published online, purposeful direction requires "something more" than just a passive website accessible to users in the forum. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418-20 (9th Cir. 1997). Plaintiffs fail to establish the requisite "something more." Plaintiffs claim that Kromtech "displays ads at www.seattlepi.com and the Spokane-area news site, www.khq.com." (Opp. 9.) But in order for advertising efforts to justify personal jurisdiction, the defendant must have "continuously and deliberately exploited" the forum's market for its website. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230 (9th Cir. 2011). Plaintiffs do not allege that Kromtech engaged in anything approaching a continuous and deliberate exploitation of the Washington

market. *Id.*[3] Plaintiffs claim only that Kromtech ads appeared on two Washington websites, but any advertisements displayed there were placed by a third party, not Kromtech. (Sosniak Suppl. Decl. ¶¶ 2-5.) Kromtech contracts with third parties to display advertising on websites *worldwide*; it did not specifically direct any ads to be placed on Washington websites, and never contracted with any Washington businesses to do so. (*Id.*) Finally, Kromtech did not "individually target" Plaintiffs in Washington because it was unaware of their geographical location. (*Id.* ¶ 7; ¶¶ 17-19[4]); *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1130 (9th Cir. 2010) (conduct must be intentional and aimed at the plaintiff in order to establish individual targeting).

***Kromtech did not cause harm it knew was likely to be suffered in Washington.*** Plaintiffs' new speculations about what Kromtech knew and intended fail to establish that Kromtech caused harm it "kn[ew] [wa]s likely to be suffered" in Washington. *Dole*, 303 F.3d at 1111. Plaintiffs now claim that "[a]s Kromtech and Vickery hoped, [the Vickery] article and false statements forced River City to drastically curtail its business operations," and "Vickery and Kromtech knew that an article about a Spokane-based business would be most interesting to Washington readers and deliberately exploited Washington markets[.]" (Opp. 9.) Kromtech did not research or write the Vickery Article, harbored no intentions as to its potential effects in Washington, and was not aware that River City Media had any operations in Washington. (Sosniak Decl. ¶ 7 (ECF No. 42 at 3); Sosniak Supp. Decl. ¶ 7.)

---

[3] Plaintiffs did not attach the alleged ads or explain when the ads appeared, and the URL they provide does not work. (Sosniak Supp. Decl. ¶¶ 2, 4.) Regardless, they do not claim the ads were at all relevant to their claims. Plaintiffs also assert that Kromtech contracts with Amazon to host its websites, but admit that this is "not directly applicable" to the specific jurisdiction analysis. (Opp. 9.)

[4] All "¶ _" citations are to the Complaint (ECF No. 1), unless otherwise noted.

Vickery's alleged knowledge about foreseeable harm in Washington cannot be imputed to Kromtech because Plaintiffs have not established an agency relationship. Moreover, the purposeful direction analysis requires "something more" than a mere "foreseeable effect." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 804-05 (9th Cir. 2004) (no jurisdiction where defamatory article could lead to harm in the forum but article was not *expressly aimed* at the forum).

Plaintiffs' reliance on *Calder v. Jones* and *Keeton v. Hustler Magazine, Inc.* (Opp. 9-10) is misplaced. In *Calder*, jurisdiction over defendants in California was proper because California was "the focal point both of the story and of the harm suffered," and defendants knew "the brunt of that injury" would be felt in [California]." *Calder*, 465 U.S. 783, 788-90 (1984). The Court reached this conclusion because defendant consulted sources *in California* for the article about *California activities* of the plaintiff, a known California resident whose career was centered there, and the magazine's largest circulation was in California. *Id*. *Keeton* involved similarly targeted interactions with the forum, where the libel claim arose out of statements published in a national magazine with a circulation of 10,000-15,000 in New Hampshire. *Keeton*, 465 U.S. 770, 771 (1984). Jurisdiction was appropriate because defendant "continuously and deliberately exploited" the New Hampshire market and therefore "must reasonably anticipate being haled into court there in a libel action based on the contents of its magazine." *Id*. The facts here are wholly distinguishable. Unlike in *Calder*, no Kromtech employee wrote the Vickery Article or gathered information from Washington, and unlike in *Keeton*, Plaintiffs do not allege that Kromtech "continuously and deliberately exploited" the Washington market, pointing to just two instances of advertising.

**B.     None of Kromtech's Forum-Related Acts Led to Plaintiffs' Claims.**

For a court to exercise specific jurisdiction over a claim, the suit must arise out of the defendant's contacts with the forum. *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014). Plaintiffs argue that a claim arises out of the defendant's conduct

wherever such conduct allegedly injures a plaintiff's reputation (Opp. 11), but the Supreme Court has made clear that "mere injury to a forum resident is not a sufficient connection to the forum." *Walden*, 134 S. Ct. at 1124-25 (explaining that injury to the *Calder* plaintiff's reputation in California was just *one consideration* that, "combined with the *various facts* that gave the article a California focus," sufficed to establish jurisdiction in California) (emphasis added).

Publication of an alleged defamatory article on a website accessible in the forum where plaintiff suffered reputational injury does not establish specific jurisdiction when defendant's contacts with the forum do not give rise to plaintiff's claim. *Callaway Golf Corp. v. Royal Canadian Golf Ass'n*, 125 F. Supp. 2d 1194, 1198 (C.D. Cal. 2000). In *Callaway*, defendant sold products through an interactive website accessible to California residents, and plaintiff brought a defamation claim arising out of an allegedly defamatory press release on defendant's website. *Id*. The court granted defendant's motion to dismiss because any commercial contacts defendant had with California had no relationship to plaintiff's claim, so it could not be said that "but-for" defendant's commercial activity on its website, plaintiff would not have suffered the alleged defamation. *Id*. at 1204.

As in *Callaway*, there is nothing about the mere publication of the Vickery Article on the MacKeeper.com website that is directed at Washington. None of the Washington-based actions Plaintiffs now attribute to Kromtech—operation of MacKeeper.com as an interactive website accessible in Washington, and two instances of advertising on Washington websites, which do not reference Plaintiffs or the Vickery Article—gave rise to Plaintiffs' claims.

**C. This Court's Exercise of Jurisdiction Would Be Unreasonable.**

The "reasonableness" factors weigh against exercising jurisdiction over Kromtech. (Mot. 10.) Kromtech did not purposefully interject itself into Washington's affairs (*see* section III(A)), and as a foreign company, the "unique burdens" Kromtech faces to defend itself in a foreign legal system must be given

"significant weight." *Amoco Egypt Oil Co. v. Leonis Nav. Co.*, 1 F.3d 848, 852 (9th Cir. 1993). The Opposition states Plaintiffs "live [in] and are attempting to rebuild their business in Washington" (Opp. 13), but the Complaint says Plaintiffs live in *Idaho* (¶¶ 17-19), and River City is a *Wyoming* LLC not registered to do business in Washington (¶ 16; Sosniak Decl. ¶ 5 (ECF No. 42 at 2)).

## IV. RULE 12(B)(6) REQUIRES DISMISSAL.

### A. Plaintiffs Waived Counts 8-9.

Plaintiffs do not oppose Kromtech's challenges to Counts 8-9. "Where plaintiffs fail to provide a defense for a claim in opposition" to a motion to dismiss, "the claim is deemed waived." *Conservation Force v. Salazar*, 677 F. Supp. 2d 1203, 1211 (N.D. Cal. 2009), *aff'd*, 646 F.3d 1240 (9th Cir. 2011). Counts 8-9 must be dismissed with prejudice. *Hadley v. Kellogg Sales Co.*, 2017 WL 1065293, at *15 (N.D. Cal. Mar. 21, 2017).

### B. The Remaining Causes of Action Also Fail.

The Complaint fails to plead that Kromtech itself illegally accessed Plaintiffs' systems, obtained any information (let alone private or trade secret information), or authored defamatory content. Plaintiffs cannot rely on Vickery's alleged actions to state a claim against Kromtech (*supra*, Section II), and new asserted facts in the Opposition cannot amend the deficient Complaint and must be disregarded. *Fabbrini v. City of Dunsmuir*, 544 F. Supp. 2d 1044, 1050 (E.D. Cal. 2008), *aff'd*, 631 F.3d 1229 (9th Cir. 2011) (holding that plaintiff's statements in opposition brief cannot amend complaint).

***The CFAA Claim Still Fails (Count 1).*** Plaintiffs offer no response to the challenge that they failed to identify which CFAA subsection(s) were allegedly violated. (Mot. 11.) Plaintiffs also concede that the Complaint does not allege that Kromtech itself accessed Plaintiffs' systems. Instead, they raise a new theory, not in the Complaint, that "Vickery published information provided to him by *Kromtech's* 'team of investigators' from *Kromtech's* Research Center." (Opp. 17.)

This is based on Plaintiffs' tortured reading of the Vickery Article, which states (in full): "A cooperative team of investigators from the MacKeeper Security Research Center, CSOOnline, and Spamhaus came together in January after [Vickery] stumbled upon a suspicious, yet publicly exposed, collection of files." (Sosniak Ex. B (ECF No. 42-2 at 15).) The article states that Vickery was the one who discovered the exposed files; it does not say that anyone else (let alone a "team of investigators" from Kromtech) provided any information. Plaintiffs' theory is not in the Complaint and is not supported by the article they cite.

Plaintiffs speculate that "discovery will likely reveal" Kromtech's CFAA liability, and insist they should be allowed to proceed to discovery because Kromtech's authorities "do not support a pleading stage dismissal." (Opp. 17-18.) But Plaintiffs' characterization of *Butera & Andrews v. IBM Corp.* is wrong; in fact, that case supports dismissal of the Complaint now. (Mot. 12.) Plaintiffs claim the *Butera* court "granted *summary judgment* because the record did not contain evidence that the corporate defendant 'tacitly knew and approved of the conduct allegedly engaged in by its employees or agents.'" (Opp. 18.) That is not true. The *Butera* court granted IBM's *motion to dismiss* under Rule 12, concluding that "the plaintiff's assertion that IBM would be vicariously liable . . . is unavailing because the plaintiff fails to '*plead facts*, which, if true, demonstrate that' IBM tacitly knew and approved of the conduct allegedly engaged in by its employees or agents." *Butera*, 456 F. Supp. 2d 104, 113 (D.D.C. 2006) (emphasis added). The court also rejected plaintiff's claim that discovery might implicate IBM (the same plea Plaintiffs make here), because the "issue is not whether [the] Plaintiff can *prove* intentional conduct at this stage, but rather whether it has even alleged the essential elements of its claim" *Id.* at 114. As in *Butera*, Plaintiffs' request to use discovery to "shor[e] up, in some *post hoc* manner, [their] reason for including [Kromtech] in this lawsuit in light of a facially deficient complaint" should be rejected. *Id.*

***The Stored Communications Act ("SCA") and Wiretap Act Claims Still***

***Fail (Counts 2 and 4)***. For the SCA claim, Plaintiffs now assert that their communications were stored on cloud backup services. (Opp. 19.) This allegation is not in the Complaint. Plaintiffs then go further to state: "*River City does not store its communications on its own computers*. Instead, River City's 'systems'—including email and Hipchat—are largely stored in a third-party cloud storage." (Opp. 19 (emphasis added).) This flatly contradicts Plaintiffs' own allegation that Vickery accessed "information *stored on River City's private computer network*." (¶ 93 (emphasis added).) The Complaint *does not* allege that Defendants accessed any communications outside of "River City's private computer network." The SCA claim must be dismissed. *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1041 (N.D. Cal. 2014) (dismissing SCA claim for failure to allege that defendant accessed plaintiffs' communications from third-party backup storage facilities).

For the Wiretap Act claim, Plaintiffs concede that the Complaint fails to allege the use of any "device" covered by the Act (Mot. 15), and they cannot point to any allegation that communications were intercepted in transit. They argue River City's *accounts* were accessed, but accounts contain messages that were already sent or received; this does not establish that any message was *intercepted in transit*. In fact, the Wiretap Act claim copies the SCA claim: both allege information was accessed *while it was stored*. (¶¶ 93, 112); *Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1152 (C.D. Cal. 2007) (electronic communication cannot be actionable under the Wiretap Act and SCA simultaneously). The Wiretap Act claim must be dismissed. *Yunker v. Pandora*, 2013 WL 1282980, at *8 (N.D. Cal. Mar. 26, 2013) (dismissing claim for failure to allege that defendant intercepted an electronic communication or that it used a "device" to do so).

***The Trade Secrets Act Claim Still Fails (Count 3).*** Plaintiffs claim they adequately alleged the information was valuable and belonged to them, but the paragraphs they cite are just boilerplate and legal conclusions. (Opp. 20 (citing ¶¶ 107-108).) Plaintiffs claim they took reasonable measures to keep information

secret, but they cite efforts to *investigate* or *monitor* alleged unauthorized access *after it occurred*, and River City only "secured *some* of its network assets with ACLs," without explaining whether the alleged trade secrets were among the subset of network assets secured by ACLs. (¶ 46 (emphasis added).)

***The Invasion of Privacy Claim Still Fails (Count 5)***. Plaintiffs argue they adequately allege an invasion of privacy claim because "Vickery intruded into Plaintiffs' email and Hipchat accounts." (Opp. 21 (citing ¶¶ 57, 61).) That is not what the Complaint says. Paragraph 57 alleges Defendants "used River City's credentials for its" email and Hipchat accounts. *River City* has no right of privacy, and the Complaint does not claim any *individual* Plaintiff's account was accessed. *Life Designs Ranch, Inc. v. Sommer*, 191 Wash. App. 320, 339 (2015) (corporations have no right of privacy and thus have no invasion of privacy claims). Paragraph 61 alleges Defendants accessed *River City*'s accounts to send emails that appeared to come from Alvin Slocombe, but Slocombe is not a plaintiff and his privacy rights are not assignable. RESTATEMENT (SECOND) OF TORTS § 652I, Comment A.

***The Intentional Interference Claims Still Fail (Counts 6-7)***. Plaintiffs assert that they are not required to allege a valid contractual relationship or identify which contracts were lost, claiming that Kromtech cited no authority for this requirement. (Opp. 21.) In fact, Kromtech cited two cases that identify the prima facie elements for these torts. (Mot. 16-17.) Plaintiffs must establish the "existence of a valid contractual relationship or business expectancy" and the "breach or termination of the relationship or expectancy[.]" *Calbom v. Knudtzon*, 65 Wash. 2d 157, 162-63 (1964). Plaintiffs do not try to rectify this deficiency. Instead, Plaintiffs point to one line in the Vickery Article ("Spamhaus will be blacklisting RCM's entire infrastructure") to argue Kromtech knew of Plaintiffs' contracts and business expectancies, but at best that indicates a *third party* (Spamhaus) was making its *own statement* that might impact Plaintiffs *if* Plaintiffs had any valid contracts or business expectancies to be impacted. (Opp. 21.)

DEF. KROMTECH'S REPLY IN SUPPORT OF
MOTION TO DISMISS - 9

DEF. KROMTECH'S REPLY IN SUPPORT OF
MOTION TO DISMISS - 9

COOLEY LLP

1700 Seventh Ave, Ste. 1900
Seattle, WA 98101-1355
(206) 452-8700

***The Defamation Claim Still Fails (Count 10).*** Plaintiffs do not dispute that the first two requirements for CDA § 230(c) immunity are met, and only contest the third element, arguing that Kromtech is not entitled to immunity because it solicited the Vickery Article and paid Vickery to write it. (Opp. 22-23.) But Plaintiffs' authorities dictate the opposite result. (*Id.*) A website operator "is 'responsible' for the development of offensive content only if it in some way encourages development of what is offensive about the content." *FTC v. Accusearch, Inc.*, 570 F.3d 1187, 1199 (10th Cir. 2009). In *Accusearch*, the website operator paid researchers to obtain legally protected information, which it then published online. *Id.* The "offending content" was the "disclosed confidential information itself," so the website operator was not entitled to immunity because it solicited confidential information it knew was obtained illegally. *Id.* The court distinguished *Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*, 206 F.3d 980, 985 (10th Cir. 2000), where defendant solicited and paid for stock price information and then was sued for publishing inaccurate information. *Id.* The inaccuracies were the offending content, and defendant received CDA § 230(c) immunity because it did not solicit the errors. *Id.* Here, the alleged defamatory statements in the Vickery Article are the "offending content." (*See* ¶¶ 71-72.) As in *Ben Ezra*, Plaintiffs do not allege that Kromtech solicited defamation,[5] nor do they allege any Kromtech employee authored the defamatory content. *See Huon v. Denton*, 841 F.3d 733, 742 (7th Cir. 2016). Kromtech is entitled to CDA § 230(c) immunity because the alleged defamatory material was developed by Vickery, not Kromtech.

**V. CONCLUSION**

For the reasons set forth above and in its Motion, Kromtech respectfully requests that the Court dismiss Plaintiffs' claims.

---

[5] Indeed, Vickery agreed to provide only "true, complete, relevant, and accurate information. . . ." (Sosniak Decl. Ex. A (ECF No. 42-1 at 7).)

Dated: August 3, 2017

Respectfully submitted,

/s/ Christopher B. Durbin
Christopher B. Durbin (WSBA No. 41159)
Matthew D. Brown (Cal. Bar No. 196972) (*admitted pro hac vice*)
Amy M. Smith (Cal. Bar No. 287813) (*admitted pro hac vice*)
Cooley LLP

Attorneys for Defendant KROMTECH ALLIANCE CORPORATION

## DECLARATION OF SERVICE

I hereby certify that on August 3, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

| | |
|---|---|
| Leeor Neta<br>leeor@newmanlaw.com | Attorneys for Plaintiffs |
| Jason E. Bernstein<br>jake@newmanlaw.com | Attorney for Plaintiffs |
| Charles L. Babcock<br>cbabcock@jw.com | Attorneys for Defendants<br>International Data Group, Inc.,<br>CXO Media, Inc. and Steve Ragan |
| William J. Stowe<br>wstowe@jw.com | Attorneys for Defendants<br>International Data Group, Inc.,<br>CXO Media, Inc. and Steve Ragan |
| Kevin J. Curtis<br>kjc@winstoncashatt.com | Attorneys for Defendants<br>International Data Group, Inc.,<br>CXO Media, Inc. and Steve Ragan |
| Aaron V. Rocke<br>aaron@rocklaw.com | Attorneys for Defendant<br>Chris Vickery |

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct to the best of my belief.

Signed and dated this 3rd day of August, 2017, in Seattle, Washington.

/s/ Christopher B. Durbin
Christopher B. Durbin (WSBA No. 41159)

148084967