1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RIVER CITY MEDIA, LLC, a Wyoming) limited liability company, MARK ) FERRIS, an individual, MATT ) FERRIS, an individual, and AMBER) PAUL, an individual, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> KROMTECH ALLIANCE CORPORATION, ) a German corporation, CHRIS ) VICKERY, an individual, CXO ) MEDIA, INC., a Massachusetts ) corporation, INTERNATIONAL DATA ) GROUP, INC., a Massachusetts ) corporation, and STEVE RAGAN, ) an individual, and DOES 1-50, ) <br> ) <br> _____Defendants, ) | Case No. 2:17-cv-00105-SAB <br><br> March 15, 2018 <br> Spokane, Washington <br><br><br><br> Civil Motion Hearing <br><br> Pages 1 - 41 |

BEFORE THE HONORABLE STANLEY A. BASTIAN
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plaintiffs: | LEEOR NETA <br> Attorney at Law <br> 505 Montgomery St., 11th Floor <br> San Francisco, California 94111 |
| For the Defendant CXO: | WILLIAM J. STOWE <br> Attorney at Law <br> 1401 McKinney St., Ste. 1900 <br> Houston, Texas 77010 |
| | KEVIN J. CURTIS <br> Attorney at Law <br> 601 W. Riverside Ave., Ste. 1900 <br> Spokane, Washington 99201 |
| For the Defendant Vickery: <br> (By Telephone) | EDWARD C. CHUNG <br> Attorney at Law <br> 1511 Third Ave., Ste. 1088 <br> Seattle, Washington 98101 |

2

1  Official Court Reporter:      Allison R. Stovall, CRR, RPR, CCR
                                 United States District Courthouse
2                                 P.O. Box 700
                                 Spokane, Washington 99210
3                                 (509) 458-3465

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25  Proceedings reported by mechanical stenography; transcript
     produced by computer-aided transcription.

1           (Court convened on March 15, 2018, at 2:40 p.m.)

2           THE COURTROOM DEPUTY:  The matter now before the Court

3   is *River City Media, LLC, et al, versus Kromtech Alliance*

4   *Corporation, et al*, Case No. 2:17-cv-105-SAB.

5       Counsel, please state your presence for the record.

6           MR. NETA:  Good afternoon, Your Honor.  Leeor Neta for

7   the Plaintiffs River City and Amber Paul, Mark Ferris, and Matt

8   Ferris.

9           THE COURT:  Okay.  You're the only plaintiffs'

10  attorney here today, though; is that correct?

11          MR. NETA:  That's correct, Your Honor.

12          THE COURT:  Very good.

13          MR. STOWE:  Your Honor, William Stowe on behalf of CXO

14  Media, Inc., Steven Ragan, and International Data Group, Inc.  I

15  have with me co-counsel, Kevin Curtis, as well.

16          THE COURT:  All right.  Thank you.

17      Good afternoon to -- and we have someone on the phone.

18  Who's on the phone, please?

19          MR. CHUNG:  Thank you, Your Honor.  This is Edward

20  Chung on behalf of the Defendant Christopher Vickery.  I was

21  putting myself on mute; hard to do, but I was told to go ahead

22  and do that.  So I'll continue putting myself on mute at this

23  point.

24          THE COURT:  All right.  Thank you.

25      All right.  We're here for some pretrial motions.  As I

1   understand them, we have the plaintiffs' motion to amend the

2   complaint and a motion regarding discovery filed by one of the

3   defendants.  I reviewed all of the paperwork pleadings on both

4   of those motions.

5         I'm just kind of wondering the way -- I mean, they're both

6   ripe for decision today, or after today, but I'm wondering,

7   Mr. Neta, you actually have the motion to amend pending, yet

8   discovery regarding jurisdiction is not completed.  So is it

9   really appropriate that we -- I mean, shouldn't we get discovery

10  done or decide that discovery's done before you have an amended

11  complaint on file?

12         MR. NETA:  I'd certainly prefer that, Your Honor.  I

13  think the reason why we went ahead and filed the motion for

14  leave to amend the complaint is because I asked defendants'

15  counsel to stipulate to extend that deadline and they refused;

16  so I wanted to make sure that that was filed on time.  If Your

17  Honor is willing, I prefer to have the discovery motion heard,

18  resolved, however it goes, and then plaintiffs would be having

19  an opportunity to amend it.

20         THE COURT:  Okay.  Your answer helps clarify exactly

21  the nature of where we are today.

22      Gentlemen, I left some paperwork on my desk right through

23  that door.  I'm just going to grab it.  Stay where you are.  It

24  won't take me ten seconds.

25                         (Off the record.)

1            THE COURT:  Let's deal with the defendants' motion on

2    discovery.  It is the defendants' motion, correct?

3            MR. STOWE:  No, Your Honor.

4            THE COURT:  It's the plaintiffs' motion.  Sorry.

5            MR. STOWE:  And I believe it's only -- there's only

6    been one -- I thought the hearing today was for the motion -- I

7    think you said there were two motions today's hearing was about?

8            THE COURT:  I -- my records show that the motion to

9    amend is also noted for hearing today.

10           MR. STOWE:  And recall Your Honor also gave them an

11   extension to amend until, I believe, tomorrow.

12       Is what you requested, correct?

13           MR. NETA:  Well, we did not request anything in

14   particular, Your Honor, but we were hoping to have the discovery

15   motion resolved before any requirement was placed on us to

16   amend.

17           THE COURT:  No, I understand that, and that makes

18   sense, but I just want to see.  The motion to amend is ECF 91,

19   and that has it without oral argument but today at -- oh,

20   tomorrow.  I'm sorry.  I am a day ahead.  Thanks for that

21   clarification.

22           MR. STOWE:  But Your Honor, it actually extended the

23   amendment deadline.  After they filed the motion for extension

24   of the amended pleadings deadline, Your Honor granted that, and

25   so the extended period to amend is tomorrow, March 16th.  So I

1    agree that their old motion to amend, I don't think they're

2    bound by that.  They can file another amendment tomorrow.  I'm

3    just pointing out because it sounded like we were on different

4    pages on that.

5            THE COURT:  Okay.  You're right.  I apologize.  But

6    the point that I was trying to make -- I was a little confused

7    on the date.  You're correct.  But the point I'm trying to make

8    is that -- I apologize for my cold -- but that we have a motion

9    regarding discovery.  I realize the defendants are saying enough

10   is enough -- my summary, not yours -- but we should get

11   discovery clarified before we proceed to what the amended

12   complaint looks like.  So all right.  So I think everybody

13   agrees with that.

14       Let's hear your argument on the discovery motion, Mr. Neta.

15            MR. NETA:  Thank you, Your Honor.  I think a lot of

16   our argument's in the briefing, but I will just quickly point

17   out that I think this case is a lot like the case of *Keeton*

18   *versus Hustler Magazine*, which we cite in our -- in our

19   briefing, in which the circulation of some magazines that really

20   had nothing to do with the allegedly libelous material was found

21   to create a basis for personal jurisdiction.  We've since

22   submitting our briefing have obtained some evidence to suggest

23   that CSOonline, the media outlet at issue in this case, has as

24   many as 20,000 page views per month; compare that with what was

25   going on in *Keeton*, where there was anywhere from ten to fifteen

1   thousand copies circulated.

2          THE COURT:  Well, these are facts.  What I'm really

3   more interested in is we have -- I mean, these are disputed

4   facts, perhaps --

5          MR. NETA:  Right.

6          THE COURT:  -- but I don't know that it really helps

7   me answer the question.  The question is discovery.

8          MR. NETA:  Yes, Your Honor.

9          THE COURT:  And there's five -- and number five's got

10  subparts, but there's five different questions that the

11  defendants object to and that you want the Court to rule on.

12  Right now, discovery is focused on jurisdiction.  At the time

13  that I ruled on the motions to dismiss last August, it appeared

14  that jurisdiction was -- that the jurisdiction you were seeking

15  was specific, not general.

16     So how -- how do these discovery requests relate to

17  jurisdiction, and specifically either to specific or general?

18  And I also take note of the fact that your -- your complaint and

19  your amended complaint, which perhaps you could do a new one by

20  tomorrow, but you haven't alleged general jurisdiction.  So

21  respond to that.  I -- I really don't care how many hits they

22  get on the computer.  That's just not relevant right now.

23          MR. NETA:  Of course.  Understood.  I agree.  And I

24  think a lot of the confusion was dealt with by the fact the

25  opposition focused so much on this issue of what is specific

1  versus general.  But these questions, if you look at them, Your

2  Honor, Request For Production 3 through 6 and Interrogatory

3  No. 3, they're drilling down into writ large what are CXO's

4  contacts within the forum state.

5           THE COURT:  So number one, "Produce all documents

6  related to CXO Media's relationship with IDG."  What does that

7  have to do with jurisdiction?

8           MR. NETA:  Well, that was actually an issue that you

9  raised in your order denying defendants' motions to dismiss.

10 One of the lines of your order specifically stated that we could

11 take discovery on the relationship between CXO and IDG for the

12 purposes of determining whether or not there was some sort of an

13 agency relationship that would draw IDG into this case.  It

14 wasn't --

15          THE COURT:  It's not jurisdiction-specific then.

16          MR. NETA:  It's not jurisdiction specifically.  Then

17 at the end of your order, Your Honor, you do say,

18 "jurisdictional discovery," so that's how this question sort of

19 was drawn into this dispute.

20          THE COURT:  Okay.  Number two, "Produce all documents

21 related to CXO's advertising and marketing of CXO's media

22 properties in the state of Washington."  How is that relevant to

23 specific or general jurisdiction?

24          MR. NETA:  Well, it's directly relevant to specific

25 jurisdiction because it inquires about CXO's contacts with the

1  forum state.  Contacts with the forum state are the basis for

2  determining personal jurisdiction, and for that purpose, I can

3  cite to the *Yahoo versus La Ligue Contre Le Racism* and

4  anti-Semitism case, the Ninth Circuit case which we cite in our

5  briefing.  In that case, it says, "In any personal jurisdiction

6  case, we must evaluate all of a defendant's contacts with the

7  forum state."  And from an opinion by Judge Coughenour in the

8  Western District of Washington that was issued several years ago

9  citing that case, he says the following:  "Merely demonstrating

10  that a nonresident defendant has limited or no contacts with a

11  particular plaintiff does not dispose of the personal

12  jurisdiction inquiry."  These questions all deal with what their

13  contacts are with the state, and that's important for evaluating

14  personal jurisdiction.

15        THE COURT:  Number three, "Produce all documents

16  related to total sales of each of CXO's ... products or

17  services, including subscriptions or memberships to magazines or

18  news sites, ... print or online, in the United States

19  generally ..."  How does that relate to specific jurisdiction

20  in the state of Washington?

21        MR. NETA:  By asking this question, "in the United

22  States generally and to Washington residents specifically,"

23  again, we're trying to get --

24        THE COURT:  No, no, but that's really two questions,

25  and I was specific.

1          MR. NETA:  I see.

2          THE COURT:  United States, generally, I mean, all the

3    -- the only thing I've seen in pleadings so far is specific

4    jurisdiction allegations.

5          MR. NETA:  Okay.  The reason why we asked this

6    question in the way that we phrased it, to try to get a sense of

7    the degree to which Washington was of an overall percentage of

8    U.S. in general so that we could tell perhaps to what extent CXO

9    is focusing on Washington vis-à-vis the U.S., but if we're --

10          THE COURT:  But is that really relevant to a specific

11    jurisdiction?  I mean, specific jurisdiction is the intent by

12    the defendant to do something in this state that would allow the

13    victim of their actions to sue them here.

14          MR. NETA:  Right.

15          THE COURT:  And so what -- how is it relevant that I

16    would know, just to make up some facts, that 52 percent of their

17    revenue is generated by the state of Washington versus the

18    United States?  Why -- why is that relevant?  What we really

19    need to know is that they did something specific in the state of

20    Washington.  We don't really care what they did in Florida.

21          MR. NETA:  Sure.  So if that's true, Your Honor -- and

22    -- and I don't disagree with your point.

23          THE COURT:  Okay.

24          MR. NETA:  If they're advertising and they're

25    targeting people in the state of Washington, they're trying to

1  get Washington consumers and Washington eyes on their website,

2  and any effort in that respect alone is enough to establish the

3  low bar for specific personal jurisdiction, then I would agree,

4  but I think we phrased it in such a way to get a percentage, but

5  I understand where you're coming from.

6             THE COURT:  Number four, "Produce all documents

7  related to CXO Media's income derived from advertising on its

8  websites to Washington state residents."  How's that different

9  than the second part of number three?

10            MR. NETA:  When you say, "number three," Your Honor,

11  you mean...

12            THE COURT:  Well, I've just -- in my notes, I just

13  have them one through --

14            MR. NETA:  Request for No. 5?

15            THE COURT:  I -- I didn't use your numbering so I'm --

16            MR. NETA:  That's fine.

17            THE COURT:  -- confusing you.  I'm sorry.

18            MR. NETA:  No, no, no.  It's fine.  I think in this

19  instance, it's specifically talking about income derived from

20  advertising versus subscriptions or memberships to magazines,

21  and that's different because on the one hand, you're talking

22  about consumers in Washington, consumers of their content,

23  people who have subscriptions; and the other one, you're talking

24  about advertising.  There are companies that choose to contract

25  with CSOonline, CXO's media property, to provide content,

1  advertising of their products, in the state of Washington

2  because they know Washington consumers read CSOonline.  And so

3  one -- one really deals with advertising.  The other one deals

4  with subscriptions and memberships.

5          THE COURT:  All right.  Now, one of the issues that

6  you brought up in the pleadings is that you're not waiving the

7  right to bring an amended complaint based on general

8  jurisdiction, but I realize this case is kind of on the

9  fast-track, or at least it has been -- and not something I did

10 but something the parties did.  But there's been nothing in the

11 plaintiffs' pleadings so far to even suggest that you have any

12 facts to show general jurisdiction.

13     I mean, I'm going to really simplify it.  What general

14 jurisdiction means for a company that -- for the state of

15 Washington, you're Microsoft or you're Boeing.  I mean, this is

16 -- this is your residence.  You do everything here.  You sell

17 your products throughout the world, but if somebody buys your

18 product in Florida and is injured or has an allegation against

19 you, they, from Florida, can come here and sue you.  That's what

20 general jurisdiction is.  I haven't seen anything in the

21 pleadings to suggest that the plaintiffs are headed down that

22 path.

23         MR. NETA:  There is this notion of alter ego theory of

24 general personal jurisdiction, which we're open to alleging and

25 pleading more details and facts about to the extent discovery

1    demonstrates it.  But what we've seen is that in a number of

2    Third Circuit opinions, that theory allows for jurisdiction over

3    a parent whose subsidiary is subject to jurisdiction within a

4    state.  Now, I'm not sure --

5              THE COURT:  But if they're two different corporations,

6    don't you have to pierce the veil somehow, I mean?

7              MR. NETA:  There may be something about that, but

8    again, we're at the discovery stage, which is the point of

9    engaging in this.  If we come back with discovery from CXO at

10   this point and IDG, and it determines definitively, Listen,

11   there's no basis for really piercing the corporate veil here,

12   which is why we asked for some of these questions, then I think

13   certainly we would focus on what's important because we're

14   trying to drill on down on this issue and move the case forward.

15             THE COURT:  Okay.  Do you have anything else you'd

16   like to say before I hear from the defendants?  I'm being very

17   specific, and I -- I have to say that I think I explain it

18   because I make a point of explaining it when we have scheduling

19   conferences, but it's explained in the order that I make myself

20   available for informal discovery disputes, and -- and you didn't

21   follow that.

22             MR. NETA:  I'm sorry, Your Honor.

23             THE COURT:  Which means, you know, I've got a lot of

24   reading to do.

25             MR. NETA:  And -- and I apologize.  I think it was the

1  freneticism around ensuring that we get this motion, if needed

2  to be, before we had to amend.  Quickly before I sit down, I'll

3  just point out again, as I said earlier, this is an internet

4  case.  It's not a case that involves a contract or something

5  like that; and for that reason, we need to focus on internet

6  cases and their view of personal jurisdiction.

7              THE COURT:  All right.  So before you sit down, I

8  guess I need to hear from you very specifically on these two

9  issues.  One, why should the Court allow you to engage in

10  discovery on general jurisdiction?  Two, on the issue of

11  specific jurisdiction, what specifically -- and I'm using

12  "specifically" in two different ways here.  What specifically in

13  the discovery request made, what specifically do you need before

14  you'd be in a position to make final decisions on an amended

15  complaint?

16              MR. NETA:  Well, I think, Your Honor, we -- we need to

17  know the extent to which --

18              THE COURT:  No, just -- don't give me an explanation.

19  Just give me --

20              MR. NETA:  Oh, very specifically?

21              THE COURT:  Yeah.

22              MR. NETA:  Advertising, revenue --

23              THE COURT:  No, no.  Tell me the numbers.  I mean,

24  I've got your request, and that's what it's --

25              MR. NETA:  Oh, the request for production.  Oh, yes.

1  Got it.  We can -- we can, I think, forget about No. 3 for the

2  time being.

3        THE COURT:  And read No. 3 to me because I'm using

4  different numbers.

5        MR. NETA:  Of course.  Request For Production No.3 is

6  "Produce all documents related to CXO Media's relationship with

7  IDG, Inc."  We'll concede --

8        THE COURT:  Okay.

9        MR. NETA:  -- we don't need that one for now.

10        THE COURT:  All right.

11        MR. NETA:  I think if we were to obtain No. 4,

12  "Produce all documents related to CXO's advertising and

13  marketing of CXO's media properties in the state of Washington,"

14  that would be very helpful.

15        THE COURT:  So you believe you need No. 2.  I've got

16  that as No. 2.  What do you call it?  What number is that for

17  you?

18        MR. NETA:  That is Request For Production No. 4, Your

19  Honor.

20        THE COURT:  Okay.

21        MR. NETA:  And then Request For Production No. 5.

22        THE COURT:  And give that one to me so I'm using the

23  same ones.

24        MR. NETA:  Of course.  "Produce all documents related

25  to total sales of each of CXO Media's products or services,

1  including subscriptions or memberships to magazines or news

2  cites ..."

3          THE COURT:  I have that.

4          MR. NETA.  "... whether print or online."  We could --

5  we could tailor that to remove the language "in the United

6  States generally".

7          THE COURT:  All right.

8          MR. NETA:  If -- if Your Honor --

9          THE COURT:  I really --

10         MR. NETA:  -- is trying to split the baby.

11         THE COURT:  All right.

12         MR. NETA:  And then No. 6, "Produce all documents

13  related to CXO Media's income derived from advertising on its

14  websites to Washington state residents."

15         THE COURT:  Okay.

16         MR. NETA:  One thing we didn't talk about, Your Honor,

17  is Interrogatory No. 3.  And based on what you've said, in an

18  effort to try to be conciliatory -- it has six parts, and I

19  think if we just focus on the ones that deal with consumers in

20  the state of Washington, that would be sufficient for our

21  purposes.

22         THE COURT:  Okay.  All right.  That's very specific,

23  and I appreciate that.

24         MR. NETA:  Anytime, Your Honor.

25         THE COURT:  Let's hear from the defense.

1          MR. STOWE:  Yes, Your Honor.  William Stowe on behalf

2    of CXO and IDG and -- and Steve Ragan.  There's a fundamental

3    difference between general and specific jurisdiction.  Your

4    Honor hit on it.

5          THE COURT:  So why shouldn't I allow the plaintiffs,

6    since we still have an open door as to an amendment?  I mean, I

7    assume if we get to the amendment, we might extend it more, but

8    right now they've still got 24 hours -- 26 hours.  Why shouldn't

9    they be allowed to amend and make allegations as to general

10   jurisdiction?

11         MR. STOWE:  Because it's -- well, if you're saying

12   not -- I'm not contesting the fact that they could amend right

13   now.  They -- the problem is they haven't, and there's a reason

14   they haven't.  They know they cannot satisfy --

15         THE COURT:  Well, I don't know that.  That's -- that's

16   your assumption.

17         MR. STOWE:  Your Honor, after the *Daimler* case, as you

18   pointed out --

19         THE COURT:  Yeah, but you haven't answered these --

20   these discovery requests.

21         MR. STOWE:  We have as to -- as to the portions

22   relating to these facts.  So for example, let's take the first

23   one that they don't -- they haven't given up on, the Request For

24   Production No. 4.  "Produce all documents related to CXO's

25   advertising and marketing of CXO's media properties in the state

1  of Washington."  So we gave -- we said, "Look, you sued us over

2  the Ragan article, a specific Ragan article.  You've alleged

3  specific jurisdiction.  We're going to give you this stuff.

4  We're going to tell you the number of views from the state of

5  Washington of that article.  We're going to tell you the revenue

6  that we got on that.

7             THE COURT:  But they want more.

8             MR. STOWE:  That's right; they do.  But that's -- that

9  more -- for example, revenue related to other articles having

10  nothing to do with this case, that would be general

11  jurisdiction.  And to answer your question, why -- why not

12  just --

13            THE COURT:  Not necessarily.  I mean, let's say there

14  were three articles involved, and maybe the contacts with the

15  Ragan article are particularly concerning, could go either way,

16  but the contacts with articles one and two, which are just made

17  up for purposes of my scenario, are a little bit stronger.

18  Wouldn't that be enough to show a specific jurisdiction?

19            MR. STOWE:  No, because it's not related to this case.

20  That's the problem.  That's the fundamental distinction.  It's

21  the -- it's the -- it's the very first case that we cite in our

22  -- in our brief.  It's the *Bristol-Myers* case cited -- excuse

23  me, decided last year.  The court said, "What is needed is a

24  connection between the forum and the specific claims at issue."

25            THE COURT:  And their claim is based on the -- the

1  article that we refer to as the Ragan article.

2          MR. STOWE:  That's exactly right.  Not --

3          THE COURT:  And so you're objecting to going beyond

4  that, that we'll give you everything related to that article,

5  nothing more.

6          MR. STOWE:  That's exactly right.  And I -- and I

7  think it's good to talk about this in terms of, you know, what

8  if they had done this in their complaint or did this in their

9  complaint?  If they had found, for example, some reason to in

10 good faith, consistent with Rule 11, allege general jurisdiction

11 -- for example, let's say that they had found out that my

12 client, CXO, had an outpost office.  Recall they're a

13 Massachusetts company.  They got all their stuff from

14 Massachusetts.  They're incorporated there, principal place of

15 business there, employees there.

16     But let's say that they had found online some reference to

17 an outpost office in Washington and decided on that basis to

18 allege general jurisdiction.  We probably wouldn't be having

19 this discussion right now because they would be alleging it, and

20 you had ruled about jurisdictional discovery, and we'd be

21 talking about that.  They don't have that.

22     We've been here for a year.  They don't -- they know they

23 cannot win on the general jurisdiction ground.  That's why --

24 here's what I think is really going on, because when I first

25 read this -- and actually, when I first got the call from them,

1    I -- I couldn't believe they didn't understand that specific is

2    linked to the case, connections to the forum linked to the case,

3    and general is not.  I think they know that.

4        What I think is going on here is they know, based on the

5    case law -- in fact, we gave Your Honor some statistics in, I

6    think, our first motion to dismiss where a federal judge had

7    looked at the post-*Daimler* -- that's the case from a couple

8    years ago -- cases finding general jurisdiction over corporation

9    in a state other than its principal place of business or state

10   of incorporation, and it was almost nothing.  It was, like,

11   75 cases found they didn't establish it and two found they did;

12   and even as to those two, the federal judge noted they were

13   outliers and explained why.  I think they know they can't win on

14   general jurisdiction.

15       So why are we looking at all these requests here?  I think

16   what they're doing is they're requesting stuff that everybody in

17   this room knows is related to general jurisdiction, but they're

18   going to try and sweep it into the specific jurisdiction

19   analysis because they -- they're not going to say -- they're

20   saying, "We're not calling it general jurisdiction, Your Honor.

21   We're calling it specific jurisdiction, but we want you to

22   consider stuff that is unrelated to the allegations and claims

23   at issue."

24       So in the *Bristol-Myers* case, for example, they had a -- a

25   plaintiff that sued a drug manufacturer over a specific drug,

1  Plavix.  The plaintiff asserted only specific jurisdiction, but

2  it said, "Court, you have specific jurisdiction, and here's

3  something in support:  other research relating to other drug

4  research that this company did in the forum."  And the Supreme

5  Court said, "No, you're confusing general and specific

6  jurisdiction.  Specific is ties to the forum related to your

7  claims, your allegations in this suit."  That other drug

8  research, that's not specific jurisdiction.

9        Similarly, we've got here they want information on other

10 articles having nothing to do with the suit.  That's general

11 jurisdiction, not specific jurisdiction.  We cited several other

12 cases for Your Honor as -- as to the distinction between general

13 and specific and why you can't conflate them to -- conflate the

14 two.

15       I do want to address *Keeton*.  Remember he brought up

16 *Keeton*?  And they brought this up in their reply, not in their

17 opening brief, so I didn't get a chance to file something in

18 response.  Here's our response.  The sentence and maxim that

19 they cite from *Keeton*, they cut the sentence off, the key

20 sentence that they put in their brief.

21       They wrote in their brief, quote, "Respondent's regular

22 circulation of magazines in the forum state is sufficient to

23 support an assertion of jurisdiction," and then they put an open

24 bracket, a period, and a closed bracket, end quote.  That's not

25 the full sentence.  The rest of the sentence says, "in a liable

1  action based on the contents of the magazine."

2       In other words, the Court in -- in *Keeton* was relying on

3  the fact that the specific magazines that contained the liable

4  that they were suing on was circulated in the forum.  It's

5  not -- and not the non-magazine at issue circulation in the

6  forum, and it's not just me that reads it that way.  Subsequent

7  courts have read it that way.  For example, in *In Re*

8  *Testosterone Replacement Therapy Products Liability*, which is

9  cited to 164 F.Supp.3d 1040, the court said:

10       "Nothing in the Supreme Court decisions plaintiffs cite,

11  however, suggest that a court may exercise jurisdiction over a

12  plaintiff's claims against a defendant when those claims are

13  unrelated to the defendants' activities within the forum state.

14  In *Keeton*, for example, the Court ruled that a New Hampshire

15  court could exercise jurisdiction over a defendant magazine

16  publisher based on the publisher's circulation of magazines

17  containing allegedly libelous content within New Hampshire."

18       And then the Court went on to say this, and this is the

19  key:  "There is no indication in *Keeton* that the plaintiff could

20  have brought suit in New Hampshire if, for example, the magazine

21  circulated within the state contained only libelous statements

22  related to other unrelated plaintiffs."  In other words, the

23  court in *Keeton* wasn't saying you can use unrelated magazines to

24  establish specific jurisdiction, and -- and we know that because

25  just last year, the court in the *Bristol-Myers* case pointed out

1  the very thing that I'm talking about.

2       So how do you reconcile *Keeton* with the *Bristol-Myers* from

3  last year?  *Keeton* was from '84.  You read *Keeton*, read the

4  whole case; and you read the sentence, the full sentence, not

5  the half sentence that they quoted in their brief.

6       I just want to point out one thing that's kind of getting

7  lost in all this.  We asserted it's not just a matter of

8  specific versus general, Your Honor.  It's also overbreadth.

9  You hit this on the head with the -- with the Florida thing.  I

10 mean, it's kind of weird because I was thinking about Florida,

11 too.

12             THE COURT:  It's been in the news recently so --

13             MR. STOWE:  Well, it's not just a matter of general

14 versus specific.  We also object because these are entirely

15 overbroad.  If they're asking about all documents related to

16 total sales of each of CXO's products or services in the United

17 States generally, I mean, obviously, that's -- that is every

18 sale that we've ever done; you know, a sale in Kentucky or

19 Massachusetts.  That has nothing to do with personal

20 jurisdiction in the state of Washington.

21       So the key point is the specific versus general dichotomy.

22 They have conflated the two, and I -- again, I don't think he

23 doesn't understand that.  I actually think he -- he realizes

24 that it's actually going to general jurisdiction.

25             THE COURT:  But what difference does that make?  I

1  mean -- I mean, you know each other better than I do, and I

2  don't really know why I have to know what you think he thinks.

3             MR. STOWE:  Yeah.

4             THE COURT:  But what difference does it make?  If he

5  gets jurisdiction, he gets jurisdiction, right?

6             MR. STOWE:  Well, no.  Let's say, for example, you

7  ordered and said, "Mr. Stowe, you have your client send them

8  information about stuff having nothing to do with the facts of

9  the case," even though he's alleging only specific jurisdiction,

10 and then he turns around and he takes that information.  Let's

11 say -- let's pick one out, CXO's advertising and marketing of

12 CXO media properties.

13     So let's say I produce to him documents relating to

14 advertising of articles from four years ago not related to this

15 suit, and then he says to you, "Your Honor, see, look here.

16 They made a little money off of an article not that we're suing

17 over, it's unrelated, and they made a little money off of people

18 in Washington."  They're going to have to if they want to make

19 that and keep it relevant.  They're going to have to say general

20 jurisdiction, not specific.

21            THE COURT:  No, I -- I understand that.  I was --

22 okay.

23            MR. STOWE:  And so as a result if they do that, it's

24 not going -- it's not going to help them because it turns out if

25 you read *Daimler* and you read *Goodyear*, that's not general

1   jurisdiction.  In your example with the Microsoft, the fact that

2   some CD ended up in -- in Florida does not subject Microsoft to

3   general, not specific.  They may be subject to specific in -- in

4   Florida if their contacts with Florida were -- gave rise to the

5   claim.  It's not going to help them establish general

6   jurisdiction.

7        It may be relevant.  It may be relevant.  I'm not saying

8   that revenues related to other articles that come out of

9   Washington, I'm not saying that's not relevant to general

10  jurisdiction.  It may be.  I'm just saying they're not alleging

11  it because then they know they can't, and hence they can't get

12  the jurisdictional discovery regarding it.

13          THE COURT:  But so far, I agree the plaintiffs have --

14  their allegations have suggested specific jurisdiction, and

15  that's been the focus, but they still have 26 hours to file an

16  amended complaint.  What's to prevent them from saying, "We've

17  got enough now to allege general jurisdiction."  They can do

18  that.  And, you know, I'm instructed under the -- by the Ninth

19  Circuit and the court rules to allow amendments quite freely.

20          MR. STOWE:  Yes, Your Honor.  Your Honor, if they

21  amend their complaint and they think they can do it consistent

22  with Rule 11, then that's a different discussion.  I think that

23  you're probably in a position at that point -- now, I can't

24  promise I'm not going to file some sort of motion regarding that

25  because it's so out -- I mean, Your Honor --

1          THE COURT:  Well, you can almost promise that you

2  would.

3          MR. STOWE:  I'm sorry, Your Honor?

4          THE COURT:  Sorry.

5          MR. STOWE:  Okay.  Well, I'm just saying, look, we're

6  not dealing in a vacuum here.  They've seen the evidence.  They

7  saw our declarations.  These are Massachusetts companies.  Their

8  stuff is all in -- they don't have anything near general

9  jurisdiction in Washington.

10          THE COURT:  So they could sue you in Massachusetts --

11          MR. STOWE:  They could.

12          THE COURT:  -- for these causes of action.

13          MR. STOWE:  They absolutely could, Your Honor.

14          THE COURT:  Then you'd be talking about general

15  jurisdiction and you'd be talking about substance of those.

16          MR. STOWE:  Well, we wouldn't.  There wouldn't be a

17  fight over personal jurisdiction.  We'd have no grounds to fight

18  over it.  And, you know, they said in their reply -- I caught

19  that.  Did you catch that where they said they haven't suggested

20  any forum where -- did they read the motion, too, that we told

21  you you could sue us up in Massachusetts, because that's an

22  alternative available forum.  That's one of the questions that

23  you look at under the -- under the test.  So sorry to ramble on.

24          THE COURT:  No, you're not.  You've been helpful.

25          MR. STOWE:  I'm -- I'm happy to take any additional

1   questions that -- oh, one -- one last thing, Your Honor.  He

2   cited the *Yahoo* case, and for whoever's looking at this, the

3   *Yahoo* case is no longer good law.  He cited the *Yahoo* case for

4   the proposition.  He said -- well, it's a direct quote from

5   *Yahoo*.  This is a Ninth Circuit case from 2006, and they cite in

6   their brief.  "A strong showing on one axis will permit a lesser

7   showing on the other."  That's, like, the first point in their

8   reply brief.

9      In other words, in the specific jurisdiction analysis, you

10   have the three prongs, and so this so-called sliding scale test

11   used to say that if you had a lot of contacts that were

12   unrelated to the claims, you don't have -- you're showing on how

13   related they are; it decreases.  Well, the court in

14   *Bristol-Myers* just last year said in describing this approach,

15   that sliding scale approach, as it was "difficult to square with

16   our precedence."  It said that it "resembles a loose and

17   spurious form of general jurisdiction," and it also said, "Our

18   cases provide no support for this approach."  So -- because when

19   I read that, I thought that's very odd specific jurisdiction

20   requires it.  Anyway, that's no longer good law, and that's all

21   I've got, Your Honor.

22      THE COURT:  Okay.  Thank you.

23      All right.  I'm going to take this under advisement, but

24   I've got a couple of other questions, and I'm not going to have

25   it under advisement for too long, perhaps by early next week.

1  But we do have a motion to amend a deadline for tomorrow, and we

2  have an amended complaint that's on file.

3       Mr. Neta, it seems to me that even if I give you the

4  opportunity to -- if I rule in your favor and say that the

5  defense should answer some more of these questions, that you

6  have your amendment on file.  I mean, I don't see how additional

7  discovery is going to help you amend the complaint.  It just may

8  help you win the -- the motion on lack of jurisdiction.  Am I

9  wrong in understanding it that way?

10       I mean, we're not -- we're not ready to argue substantively

11  jurisdiction yet.  That's going to be -- that's going to be done

12  maybe.  Maybe you'll convince the defendant, but that will be

13  done at a later time.  You have the amended complaint.  You

14  don't need more time to do an amended complaint.  That's what

15  I'm getting at.

16       MR. NETA:  That's perhaps true, Your Honor.  I could

17  use the discovery to perhaps add more facts, perhaps do it in

18  such a way that it would be impossible for the defendant to

19  really put forward a motion to dismiss for lack of personal

20  jurisdiction and that this case gets moving forward as I

21  would've liked it to happen.

22       THE COURT:  Well, you can always do that by

23  stipulation.  What I'm -- what I'm getting at and why I'm asking

24  the question is I'm taking this under advisement.  There's a

25  deadline for tomorrow.  My decision, which you won't get until

1  next week, impacts the deadline for tomorrow, but it strikes me

2  that deadline for tomorrow has already been met.  You filed your

3  amended complaint, and even if I allow additional discovery on

4  the issue of specific jurisdiction, that just helps you win the

5  argument perhaps, but it doesn't help you amend the complaint.

6  That's what I'm trying to say, but maybe I said it a little more

7  clear the second time.

8            MR. NETA:  If we reach a stipulation on it, yes, Your

9  Honor.

10            THE COURT:  Okay.

11            MR. NETA:  I would think that this discovery will help

12  us amend -- perhaps amend the complaint further.

13            THE COURT:  Right.  Now, you have already exchanged

14  discovery, and the defense has responded on specific issues

15  regarding the Ragan article; is that correct?

16            MR. NETA:  That's correct, Your Honor.

17            THE COURT:  All right.  All right.  I have my

18  questions answered.  Did you have anything else you'd like to

19  say in response to the --

20            MR. NETA:  Just very quickly, Your Honor.  I know your

21  time is limited.

22            THE COURT:  No, it's not -- not bad.  I'm just -- on

23  discovery, I just try to be very focused, and --

24            MR. NETA:  I appreciate --

25            THE COURT:  -- attorneys try to be very --

1          MR. NETA:  I understand.

2          THE COURT:  Try to advocate.

3          MR. NETA:  I understand that, Your Honor.  All I --

4          THE COURT:  Advocacy is not really the point today.

5   I'm just trying to get this case moving forward.

6          MR. NETA:  Absolutely.  I think it's our obligation to

7   evaluate all of the defendants' contacts with the forum.  That's

8   what discovery does.  *Bristol-Myers* just has to deal with

9   nonresidence claims.  I think if you read *Keeton*, you'll see

10  that we haven't misquoted anything in our brief.  This is an

11  internet case, and internet cases like it have found personal

12  jurisdiction even when there are no offices, no employees, no

13  servers, and only two percent of revenue in a given state.

14      There's no alternative forum because we can't hear this

15  case in Massachusetts.  Then we'll have all the other defendants

16  saying that they can't be drawn in there, either.  This is where

17  the harm was felt, and in every tort case, especially the

18  internet, that's where it --

19         THE COURT:  Well, but you could sue -- I mean, I don't

20  know.  I'm just throwing this out there.  Can't you sue

21  different defendants in different jurisdictions and then bring

22  motions to consolidate?

23         MR. NETA:  I -- I don't believe that that would be

24  possible.  We're going to get the same arguments and claims from

25  the individuals -- in this case, Chris Vickery and Steve Ragan,

1   who are in Indiana and California and did all their activities

2   in California -- to say, "Well, we can't get dragged in."

3          THE COURT:  I'm not suggesting you go do that now.  I

4   mean, you've made the choice to sue here, and the question for

5   me soon is did you sue this defendant in the right place and can

6   you proceed?  That's really what we're talking about today.

7          MR. NETA:  Yeah.

8          THE COURT:  Actually, what we're talking about, do you

9   have enough information to make that argument or do you --

10          MR. NETA:  Precisely.

11          THE COURT:  -- want a little more?

12          MR. NETA:  We're -- we're -- we're -- we're not yet at

13   that place.  But in terms of alternative available forum, the

14   cases that they cite, there was a very clear place where the

15   case could go because that was the cite of the ax -- editor or

16   something like that.  Here, there's four or five different

17   places, including a defendant that's based in Dubai; so slightly

18   different issue.

19          THE COURT:  So last issue, and I'll give you both a

20   chance to speak to this.  The defendant has requested fees for

21   responding to this.  The civil rule doesn't require fees be

22   awarded, but it suggests very strongly that fees should be

23   considered when the parties argue a formal discovery motion.

24   That is in part one of the reasons I make myself available for

25   informal discovery resolution.  Informal discovery resolution

1  was not followed here so why shouldn't I -- if I deny your

2  motion on discovery, why shouldn't I award fees to the

3  defendant?

4           MR. NETA:  Well, because, Your Honor, I think we were

5  forthright in our efforts to meet and confer with defendant.  We

6  asked them numerous times over the course of months for them to

7  produce this document -- these documents.  We made it clear that

8  that was important for us.  We were forthcoming in our

9  discovery.  We produced even one of our party deponents for --

10 for a deposition.

11      We're -- we don't believe this case should come down to a

12 dispute about discovery.  Everybody should be forthcoming about

13 the things that are being asked about within reason and so that

14 we figure out what's really going on here so that we move

15 forward.  We're trying to be forthcoming, having people appear

16 for discovery, responding to all the discovery, which is

17 considerable, and we're just wanting that exchange.

18           THE COURT:  But the issue of fees isn't your behavior.

19 It's kind of more what they have to put through.  And they're --

20 and they're saying, "Look, we didn't do anything wrong.  You

21 can't sue us here.  You're stretching the law by suing us here.

22 You don't have facts sufficient --" I mean, I'm summarizing the

23 arguments that I think I see -- "and your discovery requests go

24 way beyond the issue of specific jurisdiction.  We tried to tell

25 you that, yet you've made us come."  And I've made everybody

1   come today except for --

2           MR. NETA:  Mr. Chung.

3           THE COURT:  Thank you.  The attorney who -- I said you

4   can appear on the phone only if you don't say anything, but if

5   you want to talk, you have to be here.

6       So they're here at a great deal of cost to them.

7           MR. NETA:  As am I, Your Honor, and it's because I

8   care about --

9           THE COURT:  Yeah, but you brought the motion.

10          MR. NETA:  It's true.  It's absolutely true.  And with

11  that -- with that said, Your Honor, we're just trying to get --

12  have the parties be forthcoming.  We're not the ones placing an

13  obstacle at this point about discovery that we think is just

14  about their contacts with the forum.

15          THE COURT:  Well, they argue you are because you're

16  asking for too much information.  I'm not -- I'm not accepting

17  their argument.  I'm just saying, you know, listen.  I practiced

18  law for a lot longer than I've been a judge, and I hated

19  discovery motions just as I'm sure the three of you do.

20          MR. NETA:  Absolutely.

21          THE COURT:  And I hated the conversation about

22  exchanging fees for those discovery motions.  I find it

23  abhorrent usually that I have to do that, but the court rules

24  strongly suggest the Court needs to think about it.  I am.  And

25  that's one of the reasons I've created an informal dispute

1  resolution for discovery, but that wasn't followed so....

2          MR. NETA:  Yeah, I appreciate that, Your Honor.  It

3  was really because we felt like this deadline was looming.  We

4  had really no choice but to file a motion.  And if we felt like

5  we didn't have to amend the complaint and they would've

6  stipulated to an extension of the deadline to amend the

7  complaint, we would've followed that procedure, but we felt like

8  our hands were tied.

9          THE COURT:  Very good.  That's -- that's your answer.

10  I accept that.

11          MR. NETA:  Thank you, Your Honor.

12      Fees.  I'll give you a chance to -- to make your pitch.

13  We're not talking about amounts yet.  If I decide that fees are

14  appropriate, I'll ask you to file a request.  But why should I

15  seriously think about fees?

16          MR. STOWE:  Your Honor, I think you pretty much

17  outlined the considerations and -- and outlined what you thought

18  our -- would be a summary of the reason.  I think you did that.

19  The only thing I would add to that is there was at one point

20  where you said -- you said, "and they think you've just gone too

21  far, that you've stretched," and that's true.  We -- we

22  absolutely do think they have gone too far and they've

23  stretched.  But I think what makes it a little different and why

24  actually fees are warranted here is that you see attorneys

25  stretch all the time in -- especially merits discovery.  This

1  isn't merits discovery.

2       What I think is different here is that it's stretching on

3  an issue that we should not be discussing, the difference

4  between general and specific.  Had they filed an amendment that

5  said general jurisdiction or had they originally alleged, it

6  would be different.  This is something that's pretty

7  fundamental, and to try and stretch on it and sweep it into the

8  specific jurisdiction analysis on something that this should not

9  be controversial, specific requires a link between the case and

10 the -- and the ties.  That's the reason I think we're a little

11 bit in a different zone here.

12          THE COURT:  All right.  I appreciate all three of you

13 making your way to Spokane today, and I appreciate the arguments

14 that you've given to me.  I have to say I usually would rule

15 from the bench.  It's not your fault, but I'm suffering from a

16 cold, and it just kind of slowed me down this week.  So give me

17 a few more days to work through this, and I'll get a written

18 decision to you.  If I do decide fees are appropriate, I'll give

19 you an opportunity to address that more specifically.  All

20 right?

21          MR. STOWE:  Understood.  Thank you, Your Honor.

22          MR. NETA:  In the meantime, Your Honor, is there a

23 deadline for tomorrow in terms of filing a motion for leave to

24 amend?

25          THE COURT:  See, that's why I asked that question.  I

1  think the deadline is in place, and it seems to me that you've

2  met that deadline.  I -- and, I mean, if I'm wrong, that's why

3  I'm giving you a chance to talk about that.  I'm not saying that

4  you're prepared to win the issue of jurisdiction.  You want some

5  more discovery.  I don't know if I'm going to give you that

6  discovery that you want, but I understand that's what you're

7  asking for, but that just gives you evidence to win the motion

8  if the motion is made that --

9           MR. NETA:  I'd like some additional discovery.  And I

10  will say that despite their refusal to answer basic questions

11  about Washington contacts, we have since obtained some --

12  through some other avenues, further evidence to support their

13  contacts with the state of Washington, and we could certainly

14  include that in the complaint.

15           THE COURT:  Well, if you want to file a new complaint

16  by tomorrow, you can.  I mean, the other remedy you have if you

17  feel that you need more time to file an amended complaint after

18  you get my decision on discovery, you're free to bring a motion

19  or seek a stipulation.  But -- but it seems to me there's two

20  possibilities here; that you've got a looming deadline and you

21  haven't met the deadline, and I understand that that's kind of

22  difficult, but you've met the deadline.  You have an amended

23  complaint on file.

24           MR. NETA:  Right.

25           THE COURT:  So I don't know that I need to move the

1  deadline right now.

2          MR. STOWE:  I'm a little unclear because to me -- and

3  maybe we covered this, but I thought -- well, I made clear that

4  what we have produced is the stuff relating to specific.  That

5  is the -- the Ragan article and stuff relating --

6          THE COURT:  I understand that's your point.

7          MR. STOWE:  I understand.  But if you ordered more and

8  you're saying that would just support what he -- the amendment

9  that they have already filed --

10          THE COURT:  Right.

11          MR. STOWE:  -- I'm not sure -- it would be -- if the

12  "more" is what I think it is, i.e. the five requests here, what

13  they filed was specific jurisdiction, not general --

14          THE COURT:  Right.

15          MR. STOWE:  -- jurisdiction.  So if he filed a general

16  jurisdiction amendment by tomorrow, I understand what you're

17  talking about, but maybe I'm confused.

18          MR. NETA:  There's still a fundamental dispute between

19  us, William, as to what -- what is specific versus general.

20      But the issue is if Your Honor finds it appropriate to

21  issue -- to compel further discovery, is that something that we

22  could include in the complaint?  It sounds like what you're

23  saying, Your Honor, is if we feel that's the case, we can always

24  move at a later date, correct?

25          THE COURT:  Exactly, exactly.

1          MR. STOWE:  Your Honor, we're going to have, obviously

2   -- I mean, it's been a year.

3          THE COURT:  Huh?

4          MR. STOWE:  We've been here a year now in this court.

5          MR. NETA:  Yeah.

6          THE COURT:  That's not an unusual period of time.  I

7   like to move things along.

8      Did you have something you'd like to say?  I mean, you've

9   been --

10         MR. CURTIS:  I just -- I believe -- for clarification,

11  I think what the Court is saying is even would they -- were they

12  to grant defendants' -- plaintiffs' pending motion, even on a

13  limited basis, that would not be dispositive of the overall

14  jurisdiction issue.

15         THE COURT:  Right.

16         MR. CURTIS:  And so I -- I think that's all the Court

17  is saying at this point in time and trying to get everybody to

18  either understand or agree that that's where we are.

19         THE COURT:  Right.

20         MR. CURTIS:  Okay.

21         THE COURT:  I think you've said it a different way,

22  but you're getting to the same point.

23         MR. CURTIS:  Right.

24         THE COURT:  And it's not like you're being forced to

25  do something to meet a meaningless deadline because you've

1    already done it.

2              MR. NETA:  Yeah.

3              THE COURT:  So we have an amended complaint.  We don't

4    know if that amended complaint is going to survive yet, and you

5    think you need some additional discovery to make a strong

6    argument to make that amended complaint survive, and I'll decide

7    whether you get that or not, and I'll do that as quickly as

8    possible, but you've got the amended complaint on file.

9              MR. NETA:  Yes.

10             THE COURT:  So I'm not going to move the deadline.

11             MR. NETA:  Understood.

12             THE COURT:  Okay.

13             MR. NETA:  Thank you, Your Honor.

14             THE COURT:  All right.

15                   (Court adjourned at 3:27 p.m.)

16

17

18

19

20

21

22

23

24

25

1                          <u>GENERAL INDEX</u>

2                                                          <u>Page</u>

3   Argument by Mr. Neta                               6

4   Argument by Mr. Stowe                             17

5   Argument by Mr. Neta                              28

6   Argument by Mr. Stowe                             34

7   Comments by the Court                             35

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                       C E R T I F I C A T E

2

3        I, ALLISON R. STOVALL, do hereby certify:

4        That I am an Official Court Reporter for the United States

5  District Court for the Eastern District of Washington in

6  Spokane, Washington;

7        That the foregoing proceedings were taken on the date and

8  place as shown on the first page hereto; and

9        That the foregoing proceedings are a full, true, and

10 accurate transcription of the requested proceedings, duly

11 transcribed by me or under my direction.

12       I do further certify that I am not a relative of, employee

13 of, or counsel for any of said parties, or otherwise interested

14 in the event of said proceedings;

15       DATED this 23rd day of March, 2018.

16

17       _____
         ALLISON R. STOVALL, CRR, RPR, CCR
18       Washington CCR No. 2006
         Official Court Reporter
19       Spokane, Washington

20

21

22

23

24

25