COOLEY LLP
MATTHEW D. BROWN (Cal. Bar No. 196972)
(brownmd@cooley.com) (*pro hac vice*)
AMY M. SMITH (Cal. Bar No. 287813)
(amsmith@cooley.com) (*pro hac vice*)
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

CHRISTOPHER B. DURBIN (WSBA No. 41159)
(cdurbin@cooley.com)
1700 Seventh Avenue
Suite 1900
Seattle, WA 98101-1355
Telephone: (206) 452-8700
Facsimile: (206) 452-8800

Attorneys for Defendant
KROMTECH ALLIANCE CORPORATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RIVER CITY MEDIA, LLC, a Wyoming limited liability company, MARK FERRIS, an individual, MATT FERRIS, an individual, and AMBER PAUL, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> KROMTECH ALLIANCE CORPORATION, a German corporation, CHRIS VICKERY, an individual, CXO MEDIA, INC., and STEVE RAGAN, an individual, and DOES 1-50, <br><br> Defendants. | Case No. 2:17-cv-00105-SAB <br><br> **DEFENDANT KROMTECH ALLIANCE CORPORATION'S RENEWED MOTION TO DISMISS PLAINTIFFS' CLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> **FED. R. CIV. P. 12(B)(2)** <br><br> Date: September 13, 2018 <br> Time: 2:00 p.m. <br> Judge: The Hon. Stanley A. Bastian <br> Courtroom: 755 <br> Trial Date: July 15, 2019 |

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ...................................................................................1

II.   FACTUAL BACKGROUND ..................................................................2

    A.    Defendants Kromtech and Chris Vickery .............................................2

    B.    The Court's Prior Order Permitting Jurisdictional Discovery .............3

    C.    Plaintiffs' Allegations Following Jurisdictional Discovery.................4

III.  LEGAL STANDARDS ..........................................................................5

IV.   PLAINTIFFS DO NOT EVEN TRY TO ESTABLISH GENERAL
    PERSONAL JURISDICTION OVER KROMTECH...................................6

V.    THE FAC DOES NOT PLEAD FACTS THAT ESTABLISH
    SPECIFIC PERSONAL JURISDICTION OVER KROMTECH.................7

    A.    The FAC Fails to Allege that Kromtech Purposefully Directed
        Any Conduct Toward Washington.......................................................7

        1.    Kromtech did not carry out any jurisdictionally relevant
            intentional act........................................................................8

        2.    Other Defendants' alleged intentional acts cannot be
            imputed to Kromtech .............................................................8

        3.    Kromtech did not expressly aim any activity at
            Washington or know the alleged harm would likely be felt
            there......................................................................................11

    B.    Plaintiffs' Claims Do Not Arise out of Kromtech's Alleged
        Forum-Related Activities ..................................................................13

    C.    Exercising Jurisdiction Over Kromtech Would Be Unreasonable ....15

VI.   CONCLUSION ......................................................................................17

Def. Kromtech's Renewed Motion to
Dismiss; Memo of P&A's

i.

Cooley LLP
1700 Seventh Avenue, Suite 1900
Seattle, WA 98101-1355
(206) 452-8700

# TABLE OF AUTHORITIES

CASES                                                                PAGE

*Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc.*,
    1 F.3d 848 (9th Cir. 1993) ................................................................. 16

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)........................................................................ 5, 16

*Calder v. Jones*,
    465 U.S. 783 (1984)..................................................................5, 11, 13

*Callaway Golf Corp. v. Royal Canadian Golf Association*,
    125 F. Supp. 2d 1194 (C.D. Cal. 2000) ............................................. 14

*Castaneda v. Saxon Mortgage. Services, Inc.*,
    No. 09-cv-1124, 2010 WL 726903 (E.D. Cal. Feb. 26, 2010)............. 8

*Chan v. Social Expeditions Inc.*,
    39 F.3d 1398 (9th Cir. 1994) ............................................................... 5

*In re Consolidated Meridian Funds*,
    485 B.R. 604 (W.D. Wash. 2013) ...................................................... 11

*Cybersell, Inc. v. Cybersell, Inc.*,
    130 F.3d 414 (9th Cir. 1997) ....................................................... 12, 16

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)........................................................................ 6, 8

*Data Disc, Inc. v. System Technological Associates, Inc.*,
    557 F.2d 1280 (9th Cir. 1977) ............................................................. 6

*Dole Food Co., Inc. v. Watts*,
    303 F.3d 1104 (9th Cir. 2002) ............................................................. 7

*Dymatize Enterprises Inc. v. Reflex Nutrition Ltd.*,
    No. 07-cv-0907, 2008 WL 161021 (N.D. Tex. Jan. 17, 2008) .......... 14

*Federal Deposit Insurance Corp. v. British-American Insurance Co.,
    Ltd.*,
    828 F.2d 1439 (9th Cir. 1987) ............................................................. 5

DEF. KROMTECH'S RENEWED MOTION TO
DISMISS; MEMO OF P&A'S

ii.

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

# TABLE OF AUTHORITIES
## (CONTINUED)

CASES                                               PAGE

*Figi Graphics, Inc. v. Dollar General Corp.*,
   33 F. Supp. 2d 1263 (S.D. Cal. 1998) ................................................................. 9

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)................................................................................................ 5

*High Maintenance Bitch, LLC v. Uptown Dog Club, Inc.*,
   No. 07-cv-0888Z, 2007 WL 3046265 (W.D. Wash. Oct. 17, 2007)................... 15

*International Shoe Co. v. Washington*,
   326 U.S. 310 (1945)................................................................................................ 5

*Lange v. Thompson*,
   No. 08-cv-0271, 2008 WL 3200249 (W.D. Wash. Aug. 6, 2008) .......... 11, 12, 13

*McGibney v. Retzlaff*,
   No. 14-cv-1059, 2015 WL 3807671 (N.D. Cal. June 18, 2015) ........................ 12

*Mohamed v. Uber Technologies, Inc.*,
   836 F.3d 1102 (9th Cir. 2016) ........................................................................ 8, 9

*Payne v. Office of the Commissioner of Baseball*,
   No. 15-cv-3229, 2016 WL 1394369 (N.D. Cal. Apr. 8, 2016) .......................... 15

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) .....................................................................*passim*

*Shute v. Carnival Cruise Lines*,
   113 Wash. 2d 763 (1989)........................................................................................ 5

*United Brotherhood of Carpenters & Joiners of America v. Building & Construction Trades Department*,
   911 F. Supp. 2d 1118 (E.D. Wash. 2012)............................................................. 9

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014).................................................................................... 7, 14

*Williams v. Yamaha Motor Co., Ltd.*,
   851 F.3d 1015 (9th Cir. 2017) ........................................................................ 8, 9

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

# TABLE OF AUTHORITIES
## (CONTINUED)

CASES                                                                PAGE

*Xcentric Ventures, LLC v. Bird*,
   683 F. Supp. 2d 1068 (D. Ariz. 2010) ............................................................ 12, 16

*Young v. New Haven Advocate*,
   315 F.3d 256 (4th Cir. 2002) ........................................................................ 12, 13

**Other Authorities**

Federal Rule of Civil Procedure
   12(b)(2) ........................................................................................................ 1, 2
   4(k)(1) ............................................................................................................... 5
   4(k)(1)(A) .......................................................................................................... 5

RESTATEMENT (THIRD) OF AGENCY § 1.01 cmt. c (2006) ......................................... 10

DEF. KROMTECH'S RENEWED MOTION TO
DISMISS; MEMO OF P&A'S                                iv.

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

## NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLAIMS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 13, 2018, at 2:00 p.m., or as soon thereafter as this motion may be heard in this Court, located at the Thomas S. Foley United States Courthouse, 920 West Riverside Avenue, Room 755, Spokane, WA 99201, defendant Kromtech Alliance Corporation ("Kromtech") will move to dismiss the First Amended Complaint (ECF No. 110), filed by plaintiffs River City Media, LLC, Mark Ferris, Matt Ferris and Amber Paul ("Plaintiffs"). This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(2) and is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Sergii Sosniak in Support of Defendant Kromtech Alliance Corporation's Motion to Dismiss (ECF No. 42 ("Sosniak Decl.")), all papers on file, and upon such other matters that may be presented to the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

As this Court noted in ruling on Kromtech's first motion to dismiss 10 months ago, Plaintiffs' original Complaint "[did] not allege facts that definitively support a finding of personal jurisdiction over Defendant[] Kromtech . . . ." (ECF. No. 60 ("Order") at 12–13.)    Plaintiffs subsequently requested and received extensive jurisdictional discovery from Kromtech—and thus had ample opportunity to explore, as the Court put it, "the *possibility* that additional facts can be discovered and alleged that will establish personal jurisdiction over [Kromtech]." (Order at 13 (emphasis added).) Nearly a year later, Plaintiffs' First Amended Complaint ("FAC") confirms that Plaintiffs did not discover and cannot allege any such facts. Indeed, as the Court predicted, "discovery regarding the relationship between Kromtech and Vickery will permit Plaintiffs and the Court to accurately assess whether it has personal jurisdiction over Kromtech." (Order at 10.) And now, even with the benefit of discovery, Plaintiffs have shown they cannot meet their burden to "produce[]

admissible evidence which, if believed, is sufficient to establish the existence of [this Court's] personal jurisdiction" over Kromtech.  (Order at 3.)

At the outset, Plaintiffs make no effort to establish general jurisdiction.  Nor do they plead facts supporting specific jurisdiction—*i.e.*, that Kromtech purposefully directed conduct toward Washington *and* that Plaintiffs' claims arise out of Kromtech's forum-related activities.  The FAC offers no facts showing that Kromtech itself engaged in any conduct sufficient to constitute minimum contacts with Washington.  Instead, Plaintiffs' jurisdictional theory rests on the unsupported legal conclusion that each Defendant (including Kromtech) acted as every other Defendant's agent.  That is no substitute for *facts* showing that Kromtech purposefully directed any relevant conduct at Washington *and* that Plaintiffs' claims arise from such conduct.  Plaintiffs' failure to plead such facts requires dismissal. But even if Plaintiffs had met their burden, exercising personal jurisdiction over Kromtech would not comport with fair play and substantial justice.

For these reasons, Kromtech respectfully requests that the Court grant this Motion and enter an order dismissing it from this action pursuant to Rule 12(b)(2).

## II. FACTUAL BACKGROUND

### A. Defendants Kromtech and Chris Vickery

Kromtech is a British Virgin Islands corporation headquartered in Dubai, United Arab Emirates.  (FAC ¶ 24; Decl. of Sergii Sosniak in Supp. of Kromtech Alliance Corp.'s Mot. to Dismiss ¶ 2.)  Kromtech develops security, maintenance, and optimization software applications for Mac computers, including the MacKeeper product, and sells those applications over the Internet.  (FAC ¶ 24; Sosniak Decl. ¶ 3.)

Kromtech does not have any offices in Washington, does not own or rent any property in Washington, and has no assets in Washington. (Sosniak Decl. ¶ 4.) None of Kromtech's directors, officers, or employees reside or work in Washington, and Kromtech has no agent for service of process here.  (*Id.*)

1     No business or corporate relationship is alleged, and none existed, between

2    Kromtech and Defendants Steve Ragan or CXO Media, Inc.  (*Id.* ¶ 6.)  As to

3    Defendant Vickery, he is not and has never been an employee of Kromtech.  (*Id.*)  In

4    January 2016, Kromtech retained Vickery as an independent contractor to provide

5    two services: (1) advise Kromtech on network security, and (2) publish two articles

6    each month; one article about a data breach, the other regarding a general security

7    topic.  (*Id.* & Ex. A.)  Vickery published his articles on the "Security Watch with

8    Chris Vickery" blog, which was hosted on Kromtech's MacKeeper.com website. (*Id.*

9    ¶ 6.)

10    Vickery had full autonomy over how he conducted his research and exclusive

11    creative control over the content of his blog posts.  (*Id.* ¶ 7.)  Kromtech exercised no

12    control over Vickery's research or the content of his articles—including the article

13    that Plaintiffs allege contains defamatory statements: "Spammergate: The Fall of an

14    Empire" (the "Vickery Article").  (*Id.* & Ex. B.)  Vickery ended his contract with

15    Kromtech in April 2017.  (*Id.* ¶ 7.)

16    **B.    The Court's Prior Order Permitting Jurisdictional Discovery**

17    In its August 28, 2017, Order on Kromtech's motions to dismiss, the Court

18    observed that "the Complaint does not allege facts that definitively support a finding

19    of personal jurisdiction over Defendant[] Kromtech . . . ."  (Order at 12–13.)

20    Specifically, the Court found it could not determine whether it has personal

21    jurisdiction over Kromtech on the basis of Kromtech's relationship with Vickery

22    because "Plaintiff was not able to allege any facts surrounding the [Vickery]

23    Agreement . . . at the time the Complaint was written."  (*Id.* at 10.)  Further noting

24    that "Plaintiffs alleged facts regarding Vickery's illegal access of Kromtech's data

25    systems," the Court ruled that "discovery regarding the relationship between

26    Kromtech and Vickery will permit Plaintiffs and the Court to accurately assess

27    whether it has personal jurisdiction over Kromtech."  (*Id.*)

28

DEF. KROMTECH'S RENEWED MOTION TO
DISMISS; MEMO OF P&A'S

3.

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

Plaintiffs subsequently propounded an extensive set of jurisdictional discovery requests on Kromtech concerning, as the Court suggested, "the relationship between Kromtech and Vickery" to "permit Plaintiffs and the Court to accurately assess whether it has personal jurisdiction over Kromtech." (*Id.* at 10.)  Kromtech produced documents and written discovery in response to Plaintiffs' discovery requests (*see* ECF Nos. 88–89), after which Plaintiffs filed their First Amended Complaint on May 31, 2018.

### C.   Plaintiffs' Allegations Following Jurisdictional Discovery

The FAC adds just three paragraphs not found in the initial complaint (*see* FAC ¶¶ 15–17), only one of which relates to Kromtech (*see id.* ¶ 17).   Plaintiffs' substantive averments are unchanged, including the allegations that Vickery accessed River City Media's computer network without authorization, collected confidential, proprietary, and sensitive data, intentionally used that data to make unauthorized purchases, and published defamatory statements about Plaintiffs in the Vickery Article.  (FAC ¶¶ 40–78.)

As before, the FAC does not allege that Kromtech itself accessed River City Media's systems, obtained any of its data, made any unauthorized purchases, or authored any defamatory statements.  Instead, Plaintiffs still allege in conclusory terms that Vickery was "an agent of Kromtech" and "[a]cting on behalf of Kromtech" when he allegedly stole River City's data and published defamatory statements. (*See id.* ¶ 17.)  Plaintiffs further allege, falsely, that Kromtech "employ[ed] Vickery," all in support of an alleged *legal* conclusion that "Kromtech is directly responsible for Plaintiffs' damages."  (*See id.*)  The only new jurisdictional allegation is that Kromtech "circulated Vickery's and other articles within the state of Washington, where Kromtech marketed and sold a significant number of units of products and services." (*Id.*)

4.

### III.   LEGAL STANDARDS

A federal court may exercise personal jurisdiction only over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located . . . ." FED. R. CIV. P. 4(k)(1)(A); (*see generally* Order at 2–6). Where, as here, no federal statute governs personal jurisdiction, courts apply the law of the state in which the district court sits. FED. R. CIV. P. 4(k)(1); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Washington's long-arm statute is coextensive with federal due process requirements. *Shute v. Carnival Cruise Lines*, 113 Wash. 2d 763, 771 (1989); *Chan v. Soc. Expeditions Inc.*, 39 F.3d 1398, 1405 (9th Cir. 1994).

"The Due Process Clause protects a defendant's liberty interest in not being subject to the binding judgments of a forum with which it has established no meaningful contacts, ties, or relations." (Order at 3–4, citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985).) The exercise of personal jurisdiction over a nonresident defendant comports with due process only when the defendant has "minimum contacts" with the forum state, such that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotation and citations omitted).

A court may assert either general or specific jurisdiction over a foreign corporation defendant, depending on the nature and extent of the defendant's contacts with the forum State. *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 918–19 (2011). Each defendant's contacts with the forum state "must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984) (citation omitted).

Plaintiffs bear the burden of proving that this Court has personal jurisdiction over Kromtech. *Fed. Deposit Ins. Corp. v. British-Am. Ins. Co., Ltd.*, 828 F.2d 1439, 1441 (9th Cir. 1987). To meet that burden, Plaintiffs "cannot simply rest on the bare allegations of its complaint." (Order at 3 (internal quotation and citation omitted).) And because Kromtech presents facts contesting personal jurisdiction, supported by

1  a declaration, the Court may "not assume the truth of [the] allegations in [the FAC]
2  that are contradicted" by the declaration.  (*See id.*); *Data Disc, Inc. v. Sys. Tech.*
3  *Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977) (citation omitted).

4  ## IV.   PLAINTIFFS DO NOT EVEN TRY TO ESTABLISH GENERAL PERSONAL
5  ## JURISDICTION OVER KROMTECH.

6  Plaintiffs did not even attempt to argue general jurisdiction in defending the
7  initial complaint (*see* Order at 4), and fail to establish general jurisdiction in the FAC.
8  A court may assert general jurisdiction over foreign corporations only "when their
9  affiliations with the State are so continuous and systematic as to render them
10  essentially at home in the forum State."  *Daimler AG v. Bauman*, 571 U.S. 117, 127
11  (2014) (internal quotation and citations omitted).  A foreign corporation is "at home"
12  in its place of incorporation and its principal place of business.  *Id.* at 134–36.  Only
13  in an "exceptional" case will general jurisdiction lie in a forum other than a
14  corporation's place of incorporation or principal place of business.  *Id.* at 139 n.19.
15  For general jurisdiction to exist, the defendant's contacts with the forum must rise to
16  a level that "approximate[s] physical presence" there.  *Schwarzenegger*, 374 F.3d at
17  801 (internal quotation and citation omitted).

18  Plaintiffs allege that Kromtech is a German company, headquartered in Dubai,
19  that maintains offices in New Orleans, Louisiana.  (FAC ¶ 24.)  Plaintiffs do not
20  allege that Kromtech has any business operations, offices, or employees in
21  Washington.  Nor do Plaintiffs allege that Kromtech conducts business in
22  Washington to the extent that its contacts with Washington "approximate physical
23  presence."  *Schwarzenegger,* 374 F.3d at 801 (internal quotation and citation
24  omitted).  Because Plaintiffs fail to allege that Kromtech is essentially "at home" in
25  Washington, they cannot meet their burden of establishing general jurisdiction.

26
27
28

DEF. KROMTECH'S RENEWED MOTION TO
DISMISS; MEMO OF P&A'S

6.

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

## V.   THE FAC DOES NOT PLEAD FACTS THAT ESTABLISH SPECIFIC PERSONAL JURISDICTION OVER KROMTECH.

Plaintiffs also cannot establish specific jurisdiction over Kromtech. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (internal quotation and citations omitted). As a result, the "defendant's suit-related conduct must create a substantial connection with the forum State," and the "relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id.* at 1121–22 (internal quotation and citation omitted) (emphasis in original). The court "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 1122; (*see also* Order at 4).

Specific jurisdiction may be exercised only when (1) the nonresident defendant purposefully directed his conduct toward the forum state; (2) the claim "arises out of or relates to the defendant's forum-related activities"; and (3) the exercise of jurisdiction comports with "fair play and substantial justice, *i.e.*, it must be reasonable." *Schwarzenegger*, 374 F.3d at 802; (*see also* Order at 4). The third element is only evaluated if Plaintiffs satisfy the first two elements. *Id.* None of these requirements is satisfied here.

### A.   The FAC Fails to Allege that Kromtech Purposefully Directed Any Conduct Toward Washington.

To start, Plaintiffs fail to show that Kromtech "purposefully direct[ed]" any of the conduct alleged in the FAC toward this forum. "Purposeful direction" requires that the nonresident defendant committed an *intentional act* that was *expressly aimed* at the forum state, causing harm that the defendant *knew* was likely to be suffered *in the forum state*. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citation omitted). The FAC fails to allege facts sufficient to meet Plaintiffs' burden on each of these three elements.

1
2

### 1. Kromtech did not carry out any jurisdictionally relevant intentional act.

3 Plaintiffs do not allege that *Kromtech itself* accessed River City's systems,
4 obtained any data, or made any unauthorized purchases. The *only* relevant activity
5 Kromtech is alleged to have undertaken itself is hosting the allegedly defamatory
6 Vickery Article on the MacKeeper.com website. (*See* FAC ¶ 72.) But Plaintiffs
7 concede that *Vickery* is the author of those statements—*not* Kromtech or any of its
8 employees. (*See id.* ¶ 67(a).) Kromtech's MacKeeper.com website hosts a variety
9 of pages about its products, in addition to the Security Research Center blog. (*Id.* ¶¶
10 31, 33.) And Vickery's blog postings were published in a section of the website
11 specifically entitled, "Security Watch with Chris Vickery"—a clear indication of his
12 creative and editorial control over that content. (*See* Sosniak Decl. Ex. B.)

### 2. Other Defendants' alleged intentional acts cannot be imputed to Kromtech.

15 Because Plaintiffs cannot show any jurisdictionally relevant intentional act by
16 Kromtech, they attempt an end run by imputing other Defendants' alleged actions to
17 Kromtech. The FAC's conclusory allegation that all Defendants acted as each other's
18 agents (FAC ¶ 27) falls well short of establishing an agency relationship between
19 Kromtech and Vickery, Ragan, or CXO Media.[1] None of those Defendants' alleged
20 acts can be imputed to Kromtech to show purposeful direction.

21 Following the Supreme Court's *Daimler* opinion, the Ninth Circuit has
22 questioned whether an agency theory can establish specific jurisdiction. *See Williams*

23

---

24 [1] Courts routinely reject boilerplate agency allegations like Plaintiffs' claim that
25 "[e]ach of the defendants was the agent of each of the other defendants" (FAC ¶ 27).
26 *See Mohamed v. Uber Techs., Inc.*, 836 F.3d 1102, 1115 (9th Cir. 2016); *Castaneda*
27 *v. Saxon Mortg. Servs., Inc.*, No. 09-cv-1124, 2010 WL 726903, at *6 (E.D. Cal. Feb.
28 26, 2010).

1     *v. Yamaha Motor Co., Ltd.*, 851 F.3d 1015, 1023–24 (9th Cir. 2017) ("[T]he *Daimler*

2     Court's criticism of the [then existing Ninth Circuit agency] standard found fault with

3     the standard's own internal logic, and therefore applies with equal force regardless

4     of whether the standard is used to establish general or specific jurisdiction.").  This

5     Court too should reject Plaintiffs' attempt to establish specific jurisdiction via a

6     tenuous (at best) agency theory.

7         But even if the Court were to entertain an agency theory, Plaintiffs fail to show

8     the requisite agent-principal relationship—which must exist before an agent's

9     contacts may be attributed to the principal for the purposes of establishing specific

10     jurisdiction.  *Id.*  To do so, Plaintiffs must allege that "both the principal and the agent

11     have manifested an assent that the principal has a right to control the agent."  *United*

12     *Bhd. of Carpenters & Joiners of Am. v. Bldg. & Constr. Trades Dep't*, 911 F. Supp.

13     2d 1118, 1135 (E.D. Wash. 2012) (citation omitted).  As explained below, Plaintiffs

14     cannot make that showing here.

15         "A critical factor" in determining whether an agency relationship exists is the

16     "degree of control exercised by the principal over the agent."  *Figi Graphics, Inc. v.*

17     *Dollar Gen. Corp.*, 33 F. Supp. 2d 1263, 1266 (S.D. Cal. 1998).  If the principal has

18     no control over the day-to-day operations, and has only the right to dictate the end

19     result, then an independent contractor relationship exists.  *Id.*  For example, in *Figi*

20     *Graphics*, the court declined to exercise jurisdiction over the defendant retail store

21     where the complaint failed to allege specific facts demonstrating that the defendant

22     had the right to control the day-to-day activities of its importer, the purported agent.

23     *Id*. at 1266–67.  The defendant did not control how or where the importer found its

24     products, and therefore did not have the "requisite degree of control" over the

25     importer to establish an agency relationship.  *Id.*; *see also Mohamed*, 836 F.3d at

26     1115 (upholding dismissal where complaint failed to include specific allegations that

27     Uber controlled individual defendant's activities).

28

Similarly here, Plaintiffs allege no facts establishing an agency relationship between Kromtech and any other defendant.  Kromtech has no connection to Ragan or CXO Media, and the FAC fails to plead that Kromtech had the right to control—or exercised any control—over Vickery's day-to-day operations.  *Cf. Williams*, 851 F.3d at 1023–25, 1025 n.5 (rejecting "conclusory" allegations that defendants were agents or employees of each other where plaintiff did not provide any factual assertions regarding degree of control exercised).  Plaintiffs offer nothing more than a bare allegation that Vickery "works as a 'security researcher' for MacKeeper.com, which is owned and operated by Defendant Kromtech." (*See* FAC ¶ 23.)  That is not nearly enough to establish an agency relationship between Kromtech and Vickery.  Indeed, the mere existence of a relationship in which one person provides services to another does not satisfy the definition of agency.  RESTATEMENT (THIRD) OF AGENCY § 1.01 cmt. c (2006).

Moreover, the Vickery Agreement itself evidences that Kromtech had no right to control Vickery's actions.  (Sosniak Decl. ¶ 7; *Id.* Ex. A.)  Vickery was retained only to advise Kromtech about network security and to post two articles each month in his blog, "Security Watch with Chris Vickery." (*Id.* Ex. A.)  Kromtech had no editorial control over the content of Vickery's articles. (*Id.*; *see also id.* ¶ 7.)  Indeed, the Agreement does not require that Vickery provide draft articles to Kromtech for its review, nor does it set out any process by which Kromtech could opine on, much less dictate, the contents of Vickery's articles.  (*Id.* Ex. A.)  Rather, the Vickery Agreement is entirely silent as to the methods Vickery should use to investigate data breaches or other security issues.  (*Id.*)  It does not require, direct, or encourage Vickery to engage in any form of security investigation—much less the "hacking campaign" Plaintiffs allege that Defendants carried out. (*Id.*; FAC ¶¶ 17, 78.)  To the contrary, the Vickery Agreement documents Kromtech's *lack* of control over

1  Vickery's actions.  This alone precludes the existence of an agency relationship
2  between Kromtech and Vickery.[2]

3     **3.    Kromtech did not expressly aim any activity at Washington**
4     **or know the alleged harm would likely be felt there.**

5     Plaintiffs also fail to allege that Kromtech's operation of the MacKeeper.com
6  website was expressly aimed at Washington or caused harm that Kromtech knew was
7  likely to be suffered in Washington.  This too precludes a finding of purposeful
8  direction.

9     To make the requisite showing in an intentional-tort case, a plaintiff must
10 establish that the nonresident defendant committed an intentional act that was
11 *expressly aimed at the forum state*, and caused harm that the defendant *knew* was
12 likely to be suffered *in the forum state*.  *Calder*, 465 U.S. at 789; *see also Lange v.*
13 *Thompson*, No. 08-cv-0271, 2008 WL 3200249, at *3 (W.D. Wash. Aug. 6, 2008)
14 ("When applying *Calder* to the internet context, specific jurisdiction may be based
15 only on the out-of-state defendant's internet activity *expressly aimed* or *directed to*
16 the forum state.") (citations omitted) (emphasis added).

17     Plaintiffs simply have not shown that Kromtech expressly aimed the allegedly
18 defamatory Vickery Article at Washington.  The Ninth Circuit has long held that

19 _____

20 [2]  Plaintiffs' aiding-and-abetting theory fails for the same reasons, as it rests on the
21 same untenable agency theory. (*See* FAC ¶ 27 ("Each of the defendants was the agent
22 of each of the other defendants, and in doing the things hereinafter alleged, was acting
23 within the course and scope of such agency . . . .").)  Moreover, Plaintiffs' conclusory
24 allegations regarding Kromtech's supposed knowledge of other Defendants' "illegal"
25 activities do not suffice, and the FAC does not assert that Kromtech assisted (let alone
26 "*substantially* assisted") in the alleged primary violations.  *See In re Consol.*
27 *Meridian Funds*, 485 B.R. 604, 616 (W.D. Wash. 2013) (reciting elements of aiding
28 and abetting).

"something more than mere foreseeability [that harm will result in the forum]" is required "in order to justify the assertion of personal jurisdiction." *Schwarzenegger*, 374 F.3d at 805; *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418–20 (9th Cir. 1997) (in cases asserting Internet-based claims, express aiming requires "something more" than making website available to users in forum state).

Thus, even if a defendant *knows* a plaintiff resides in the forum state where allegedly defamatory statements are accessible on the Internet, that is not enough to establish "express aiming" at the forum. *Lange*, 2008 WL 3200249, at *3 (defendant did not "expressly aim" allegedly defamatory comments at Washington even though he knew plaintiff resided there when comments were published); *see also Xcentric Ventures, LLC v. Bird*, 683 F. Supp. 2d 1068, 1073 (D. Ariz. 2010) (no "express aiming" where there was no connection between allegedly defamatory article and Arizona other than that article was about plaintiff, who defendant knew resided in Arizona); *McGibney v. Retzlaff*, No. 14-cv-1059, 2015 WL 3807671, at *4 (N.D. Cal. June 18, 2015) (recognizing "the plainly obvious proposition that merely posting on the Internet negative comments about the plaintiff and knowing the plaintiff is in the forum state are insufficient to create minimum contacts") (internal quotation and citation omitted).

On this point, the case of *Young v. New Haven Advocate* is particularly instructive. 315 F.3d 256 (4th Cir. 2002). In *Young*, the plaintiff warden of a Virginia prison alleged that two Connecticut newspapers defamed him in Internet articles about his prison and his allegedly racist views. *Id.* at 259, 263. The plaintiff argued that jurisdiction over the Connecticut-based defendants was proper in Virginia because they knew plaintiff was a Virginia resident, they intentionally defamed him in articles posted on their websites which were accessible in Virginia, and the primary effects of the defamatory statements on the plaintiff's reputation were felt in Virginia. *Id.* at 261–62. Reversing the district court, the Fourth Circuit held that the non-resident defendants were *not* subject to jurisdiction in Virginia because the

DEF. KROMTECH'S RENEWED MOTION TO
DISMISS; MEMO OF P&A'S
12.
COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

newspapers had not "manifest[ed] an intent to target and focus on Virginia readers." *Id*. at 263.  As a result, the newspapers "could not have 'reasonably anticipate[d] being haled into court [in Virginia] to answer for the truth of the statements made in their article[s].'"  *Id*. at 263–64 (quoting *Calder*, 465 U.S. at 790) (other citations omitted).

The FAC is similarly devoid of allegations that Kromtech expressly targeted the Vickery Article at Washington readers through the online publication of the Vickery Article.  Plaintiffs do not allege that Kromtech made any attempt to direct the Vickery Article at Washington residents or solicit readers for the Vickery Article from Washington IP addresses.  The FAC's vague allegation that Kromtech "circulated Vickery's and other articles within the state of Washington" is wholly unsupported and insufficient.  (FAC ¶ 17.)  Plaintiffs do not allege how Kromtech allegedly "circulated" the Vickery article "within the state of Washington," precisely because no such "circulation" occurred.  (*Id*.)  The best Plaintiffs can do is allege is that the Vickery Article was published on the Internet, where it was available *globally*.  That does not suffice to establish express aiming.  *See Lange*, 2008 WL 3200249, at *3.

Because Kromtech did not "expressly aim" or "direct" any conduct toward Washington, it could not have "reasonably anticipate[d] being haled into court" in Washington to answer for the truth of statements made in the Vickery article.  *See Young*, 315 F.3d at 264 (internal quotation and citation omitted).

**B.    Plaintiffs' Claims Do Not Arise out of Kromtech's Alleged Forum-Related Activities.**

Plaintiffs' failure to allege facts supporting a finding of purposeful direction (as explained above) is sufficient by itself to grant Kromtech's motion.  Even so, Plaintiffs also fail to allege that their claims arise out of Kromtech's alleged contacts with the forum.  This constitutes an independent basis to dismiss Plaintiffs' claims for lack of personal jurisdiction.  *See Walden*, 134 S. Ct. at 1122.

The Supreme Court has made clear that "mere injury to a forum resident is not a sufficient connection to the forum." *Id*. at 1124–25; (*see also* Order at 5 ("'Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State.'") (quoting *Walden*, 134 S. Ct. at 1125)). More specifically, a defendant's publication of an alleged defamatory article on a website accessible in the forum where plaintiff suffered reputational injury is not enough to establish specific jurisdiction; a plaintiff must also show that the defendant's contacts with the forum gave rise to plaintiff's claim. *Callaway Golf Corp. v. Royal Canadian Golf Ass'n*, 125 F. Supp. 2d 1194, 1198 (C.D. Cal. 2000). In *Callaway*, the defendant sold products through an interactive website accessible to California residents, and plaintiff brought a defamation claim arising out of an allegedly defamatory press release on defendant's website. *Id*. The court granted defendant's motion to dismiss because any commercial contacts the defendant had with California had no relationship to plaintiff's claim. *Id*. at 1204. As a result, it could not be said that "but-for" defendant's commercial activity on its website, plaintiff would not have suffered the alleged defamation. *Id*.; *see Dymatize Enters. Inc. v. Reflex Nutrition Ltd.*, No. 07-cv-0907, 2008 WL 161021, at *7 n.38 (N.D. Tex. Jan. 17, 2008) (declining to exercise specific jurisdiction over United Kingdom-based defendants based on sales of their products to forum state; defamation claim regarding Internet-based statement did not arise out of those sales).

As in *Callaway*, Kromtech's alleged marketing and sales of products and services to customers in Washington has no relationship to Plaintiffs' claims. (FAC ¶ 17.) Plaintiffs do not allege that "but for" any marketing or sale of Kromtech's products or services, Plaintiffs would not have suffered the alleged defamation.[3] The

---

[3] Even if Plaintiffs' claims did arise from the sale of Kromtech products to Washington (which they do not), "the existence of an interactive website which may

14.

1  FAC's vague and conclusory allegation that Kromtech allegedly "marketed and sold

2  a significant number of units of products and services" in Washington is inapposite.

3  (*Id.*)  This is not a product-liability action where the plaintiffs' claims and injury arise

4  from the sales of the defendants' products.

5  Nor does Kromtech's ownership of the MacKeeper.com website establish that

6  Kromtech exercised any degree of control over any of the other Defendants—much

7  less the specific defamatory aspects of the articles from which Plaintiffs' claims arise.

8  *See* Section V(A)(2), *supra*; *see also Payne v. Office of the Comm'r of Baseball*, No.

9  15-cv-3229, 2016 WL 1394369, at *6 (N.D. Cal. Apr. 8, 2016) ("arising out of"

10  element not satisfied where plaintiffs did not allege that defendants exerted control

11  over specific acts that gave rise to plaintiffs' claims).

12  In sum, Plaintiffs have not shown that Kromtech's forum-related conduct was

13  a but-for cause of their alleged injuries.  Plaintiffs' failure to do so requires dismissal.

14  **C.    Exercising Jurisdiction Over Kromtech Would Be Unreasonable.**

15  Plaintiffs' failure to plead the "purposeful direction" and "arising out of"

16  elements, as explained above, should end the jurisdictional analysis.  *See*

17  *Schwarzenegger*, 374 F.3d at 802 (defendant must show unreasonableness *only* if

18  plaintiff succeeds in satisfying first two requirements).  But even if Plaintiffs had

19  done so, the exercise of jurisdiction over Kromtech in Washington would not

20  "comport with fair play and substantial justice." (*See* Order at 5–6.)

21  There is no dispute that Kromtech is a foreign corporation with no offices,

22  employees, property, or other business presence in Washington.  Accordingly, it

23  would be exceptionally burdensome for Kromtech to defend this action here.

24  (Sosniak Decl. ¶ 4.)  This alone should carry "significant weight" in assessing

25  _____

26  be accessed by Washington residents does not satisfy specific jurisdiction."  *High*

27  *Maint. Bitch, LLC v. Uptown Dog Club, Inc.*, No. 07-cv-0888Z, 2007 WL 3046265,

28  at *3 (W.D. Wash. Oct. 17, 2007) (collecting cases).

whether Kromtech should suffer the "unique burden" of being forced to defend this action in a foreign court. *Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc.*, 1 F.3d 848, 851 (9th Cir. 1993) ("The *unique burdens* placed upon one who must defend oneself in a foreign legal system should have *significant weight* in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.") (internal quotation and citation omitted) (emphasis added).

In contrast, any concerns about Plaintiffs' ability to seek redress for Internet-based defamation in a forum other than their own "are mitigated [] by the relative ease of modern air travel." *Xcentric Ventures*, 683 F. Supp. 2d at 1075 n.2. "Requiring plaintiffs to bear the burden of traveling is consistent with requiring plaintiffs to bear the burden of proof at trial, and with the goal served by personal jurisdiction rules of preventing defendants from being unreasonably haled into a distant, and potentially biased, forum." *Id.*

Further, as the Court previously noted, "[t]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." (Order at 6 (quoting *Cybersell*, 130 F.3d at 419; other internal quotation and citation omitted).) Courts are cognizant, however, that "[t]he exercise of personal jurisdiction over nonresidents merely because they allegedly posted defamatory statements on the internet about a known forum resident could have dramatic consequences for internet-based communication." *Xcentric Ventures*, 683 F. Supp. 2d at 1075 n.2. Specifically, "[t]he ability to hale an internet user into a distant forum based on an allegation of intentional defamation could be used to chill free speech." *Id.*

Finally, while the burden on Kromtech is great, Washington has little interest in this dispute. *See id.* It is true that a state "'generally has a "manifest interest" in providing *its residents* with a convenient forum for redressing injuries inflicted by out-of-state actors.'" (Order at 6 (quoting *Burger King*, 471 U.S. at 473; emphasis added).) Here, however, the individual Plaintiffs are residents of *Idaho* (FAC ¶¶ 20–

22), and River City Media is a *Wyoming* limited liability company that is not even registered to do business in Washington (FAC ¶ 19; Sosniak Decl. ¶ 5). Plaintiffs plead no Washington state-law causes of action, and Plaintiffs' federal causes of action do not implicate any Washington state interests. (*See* FAC ¶¶ 91–160.)

On balance, the due-process analysis shows that the burdens on Kromtech of litigating in this distant forum are not outweighed by any potential burdens on Plaintiffs or Washington's (non-existent) interest in this dispute. Because requiring Kromtech to defend against Plaintiffs' claims in Washington would not be reasonable, the Court should dismiss Kromtech from this action.

## VI. CONCLUSION

For the reasons set forth above, Kromtech respectfully requests that the Court grant this Motion and dismiss Plaintiffs' claims against Kromtech for lack of personal jurisdiction.

Dated: June 15, 2018

Respectfully submitted,

*/s/ Christopher B. Durbin*

Christopher B. Durbin (WSBA No. 41159)
Matthew D. Brown (Cal. Bar No. 196972) (*pro hac vice*)
Amy M. Smith (Cal. Bar No. 287813) (*pro hac vice*)
Cooley LLP

Attorneys for Defendant KROMTECH ALLIANCE CORPORATION

DEF. KROMTECH'S RENEWED MOTION TO DISMISS; MEMO OF P&A'S
17.
COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

## DECLARATION OF SERVICE

I hereby certify that on June 15, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Leeor Neta                          Attorneys for Plaintiffs
Newman Du Wors LLP
505 Montgomery Street, 11th Fl.
San Francisco, CA 94111-2585
Email:  leeor@newmanlaw.com

Jason E. Bernstein             Attorney for Plaintiffs
Newman Du Wors LLP
2101 Fourth Avenue, Ste. 1500
Seattle, WA  98121
Email:  jake@newmanlaw.com

Charles L. Babcock           Attorneys for Defendants
Jackson Walker LLP           CXO Media, Inc. and Steve Ragan
1401 McKinney Str., Ste. 1900
Houston, TX  77010
Email:  cbabcock@jw.com

William J. Stowe              Attorneys for Defendants
Jackson Walker LLP           CXO Media, Inc. and Steve Ragan
1401 McKinney Str., Ste. 1900
Houston, TX  77010
Email:  wstowe@jw.com

Kevin J. Curtis                 Attorneys for Defendants
WINSTON & CASHATT,      CXO Media, Inc. and Steve Ragan
601 W. Riverside, Ste. 1900
Spokane, WA  99201
Email:  kjc@winstoncashatt.com

///

///

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Edward C. Chung                     Attorneys for Defendant
CHUNG, MALHAS &                     Chris Vickery
MANTEL, PLLC
1511 Third Avenue, Suite #1088
Seattle, WA  98101
Email:  echung@cmmlawfirm.com;
Litigation@cmmlawfirm.com

    I declare under penalty of perjury under the laws of the State of Washington

that the foregoing is true and correct to the best of my belief.

    Signed and dated this 15th day of June, 2018, in Seattle, Washington.

                          */s/ Christopher B. Durbin*
                         Christopher B. Durbin (WSBA No. 41159)